**Richard L. KRAUSHAAR, Petitioner,**

v.

**DEPARTMENT OF AGRICULTURE, Respondent.**

No. 02–3192.

United States Court of Appeals, Federal Circuit.

DECIDED: March 10, 2003.

Before BRYSON, GAJARSA, and DYK, Circuit Judges.

## DECISION

PER CURIAM.

Richard Kraushaar appeals from the final decision of the Merit Systems Protec- tion Board ("Board") denying his request for corrective action. *Kraushaar v. Dep't of Agriculture,* Docket No. SF–1221–00– 0088–B–1, 2002 WL 104579 (Jan. 10, 2002). Because the Board's decision is not arbi- trary, capricious, or an abuse of discretion, and is otherwise in accordance with law, this court *affirms.*

## BACKGROUND

In October 1985, Mr. Kraushaar began serving as a Forestry Technician with the Department of Agriculture's ("Agency's") Lake Tahoe Basin Management Unit ("LTBMU") in South Lake Tahoe, Califor- nia. The law enforcement officer ("LEO") component of the LTBMU consisted of Mr. Kraushaar, Nathan Leising ("Leis- ing"), also a Forestry Technician, and their supervisor Special Agent David Cotter ("Cotter"). In a LEO capacity, Mr. Kraushaar had the authority to carry a firearm and to make arrests.

Based upon testimony from all three individuals, the Administrative Judge ("AJ") found that there was "friction" among the three from the outset. Specifi- cally, Mr. Kraushaar and Mr. Leising filed many union grievances against Cotter over various disputes. After one such dispute involving annual leave, Mr. Kraushaar sent a letter to the Secretary of Agriculture, complaining about his "supervisor and oth- er higher level employees." In addition, Mr. Kraushaar made the same complaint by making an anonymous call to a "hot- line" number maintained by the Agency's Office of Inspector General ("OIG").

Subsequently, Mr. Kraushaar's com- plaints were sent to the Agency's Pacific Southwest Region ("Region 5") in San Francisco, California. In order to investi- gate these allegations, Region 5 sought assistance from the Agency's Southeast

Region ("Region 8"). To that end, Region 8 sent Special Agent Leslie Burril ("Burril") to investigate the allegations made by Mr. Kraushaar and prepare a report for Region 5 management.

Pursuant to the investigation, Burril interviewed both Mr. Kraushaar and Mr. Leising. During the interviews with Burril, both individuals alleged wrongdoing and mismanagement that was occurring at work. In addition, both men indicated that they were being treated for medical problems caused by their supervisor, Cotter. With respect to Mr. Kraushaar's situation specifically, he indicated that he was seeing a counselor because of the work environment on the LTBMU and that his counselor had recommended that he not carry a firearm while in the presence of Cotter. Mr. Kraushaar also told Burril that he was a "safety hazard" to himself as well as to others.

As a result of these statements, Region 5 management decided to suspend both men's law enforcement officer authority that is, the authority to carry firearms and make arrests. Moreover, because Mr. Kraushaar was unable to function as a LEO, he was detailed to a non-LEO (Archaeologist) position effective February 10, 1991. On March 10, 1991, the Agency permanently reassigned Mr. Kraushaar to another non-LEO (Small Sales Technician) position.

Mr. Kraushaar filed an individual right of action alleging that he made protected disclosures, under 5 U.S.C. § 2302(b)(8), in his November 12, 1990 letter to the Secretary of Agriculture, his telephone hotline call to OIG on November 13, 1990, and his interview and written statement given on January 26–28, 1991 to Burril. The AJ found that Mr. Kraushaar's detail and reassignment were both covered personnel actions under 5 U.S.C. § 2302(a)(2)(A)(iv) and that he had exhausted his remedy with the Office of Special Counsel, thus satisfying two of the three required jurisdictional elements. With respect to the third requirement, the AJ determined that Mr. Kraushaar had not shown that he had made any disclosures protected under the Whistleblower Protection Act ("WPA"). Accordingly, the case was dismissed for lack of jurisdiction.

On petition for review, the full Board concluded that neither Mr. Kraushaar's letter to the Secretary of the Agriculture, nor his hotline call to OIG constituted protected disclosures. Of the 43 separate complaints made in the interview and written statement by Mr. Kraushaar, the Board found only three to be protected: (1) the disclosure that Cotter had failed to provide Mr. Kraushaar with certain training assignments, as required by the Agency's Law Enforcement Management Plan; (2) the disclosure that Cotter had issued an unsatisfactory performance rating without first having done a mid-year review in writing, as required by the Agency's Performance, Training and Awards Handbook; and (3) the disclosure that Cotter had threatened discipline if Mr. Kraushaar did not use annual leave that he had requested, but no longer desired to use, in violation of the Agency's Pay Administration, Attendance and Leave Handbook. The case was remanded back to the AJ for adjudication on the merits.

On remand, the AJ determined that the disclosures contributed to the personnel actions, but that the Agency showed by clear and convincing evidence that it would still have taken the same actions regardless of the disclosures. Mr. Kraushaar petitioned for review, but was denied by the full Board on January 10, 2002, thus making the AJ's initial decision final. This timely appeal followed. We have jurisdiction to hear the case pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

This court must affirm a Board decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *Carr v. Social Sec. Admin.*, 185 F.3d 1318, 1321 (Fed.Cir.1999).

The WPA prohibits a personnel action against an employee because of "any disclosure of information by [such] employee ... which the employee ... reasonably believes evidences (i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety...." 5 U.S.C. § 2302(b)(8) (2000); *Carr*, 185 F.3d at 1322. Under the statute, if an employee shows by a preponderance of the evidence that he made a protected disclosure, that subsequent to the disclosure he was subject to a personnel action, and that the disclosure was a contributing factor to the personnel action taken against him, corrective action may be ordered unless the agency proves by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. *See* 5 U.S.C. § 1221(e) (2000); *Carr*, 185 F.3d at 1322.

Here, the Board found that Mr. Kraushaar made three protected disclosures to Burril. In addition, these protected disclosures were found to be a contributing factor in the personnel actions that were taken against Mr. Kraushaar. In any event, the AJ, on remand, denied Mr. Kraushaar's request for corrective action because the Agency demonstrated that it would have taken the actions in the absence of the protected disclosures. Therefore, because the parties do not dispute the finding that Mr. Kraushaar established a *prima facie* case of retaliation under the WPA, the only issue before this court is whether there is substantial evidence to support the AJ's determination that the Agency demonstrated by clear and convincing evidence that it would have taken the personnel actions against Mr. Kraushaar absent the protected disclosures. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

■ Mr. Kraushaar argues that the Agency failed to prove by clear and convincing evidence that it would have reassigned him absent the protected disclosures. In particular, Mr. Kraushaar asserts that the Agency had little reliable evidence to support its actions. In determining that the Agency had met its burden of proof by clear and convincing evidence, however, the AJ properly considered three factors: (1) the strength of the evidence in support of the agency actions; (2) the strength of any motive to retaliate by the deciding officials; and (3) any evidence that the agency took similar actions against other employees who were not whistleblowers, but who were similarly situated. *See Carr*, 185 F.3d at 1323 (this test is appropriate for determining whether, in a given case, an agency has carried its burden of establishing by clear and convincing evidence that it would have taken the personnel action at issue in the absence of the protected disclosures). Moreover, such evidence must be weighed at the time of the personnel action. *Yunus v. Dep't. of Veteran Affairs*, 242 F.3d 1367, 1372 (Fed.Cir.2001).

The AJ found that, with respect to Mr. Kraushaar's detail to the non-LEO position of Archaeologist, the Agency had pre-

sented persuasive evidence showing that the personnel actions taken against the appellant were justified. In particular, the AJ found persuasive Mr. Kraushaar's disclosures to Burril about his psychological problems towards his supervisor. The AJ further found that the deciding agency officials lacked a "substantial" motive to retaliate against Mr. Kraushaar and that a similarly situated employee, Mr. Leising,[1] also was detailed. After reviewing all of the evidence, the AJ concluded that the Agency proved by clear and convincing evidence that it would have taken the same personnel actions against Mr. Kraushaar even in the absence of his protected disclosures.

Similarly, with respect to Mr. Kraushaar's permanent reassignment as a Small Sales Technician, the AJ found that the evidence did not suggest that he would be returned to his former position when the detail ended. The AJ found "that the bulk of the evidence suggested that local management did not foresee returning either employee to his former position when the detail ended." There is evidence in the record that supports this finding. In particular, Michael Duffy, who was the Director of Financial Management and Law Enforcement in 1991, testified that once the Agency suspended Mr. Kraushaar's law enforcement duties, it then had to reassign him to a position that he could perform. Thus, there is substantial evidence to support that the Agency met its burden of proving that it would have reassigned Mr. Kraushaar regardless of his protected disclosures.

▆▆▆▆ Next, Mr. Kraushaar makes several arguments with regard to the AJ's

credibility determinations and evidentiary rulings. This court must accept the AJ's discovery and evidentiary rulings unless there has been an abuse of discretion. *Curtin v. Office of Pers. Mgmt.,* 846 F.2d 1373, 1378 (Fed.Cir.1988). When there is conflict of testimony among witnesses, it is the duty of the AJ to determine the credibility of the witnesses and to accept the testimony it finds most plausible. *See Hambsch v. Dep't of the Treasury,* 796 F.2d 430, 436 (Fed.Cir.1986); *see also Haebe v. Dep't of Justice,* 288 F.3d 1288, 1299 (Fed.Cir.2002). Furthermore, these credibility determinations are "virtually unreviewable" on appeal. *See Hambsch,* 796 F.2d at 436.

Here, Mr. Kraushaar takes issue with the credibility of Burril's investigation report. As noted by the AJ, Burril was an impartial investigator who interviewed Mr. Kraushaar and completed a memorandum shortly after the investigation. The AJ also found Burril's testimony to be forthright. Moreover, the AJ stated that even if he were to discredit Burril's account of the events, it would not weaken the Agency's evidence because Mr. Kraushaar admitted most of the salient points. As such, we find no reason to disturb the AJ's credibility and evidentiary rulings.

Mr. Kraushaar makes several other arguments in his brief that are directed to retrying factual issues decided against him by the AJ, but that is not our function. *Briley v. Nat'l Archives & Records Admin.,* 236 F.3d 1373, 1377 (Fed.Cir.2001).

We have considered Mr. Kraushaar's remaining arguments and find them not persuasive.

---

1. Based on the AJ's opinion, it may be arguable that the AJ found Mr. Leising to be a similarly situated non-whistleblower. Notwithstanding that determination, the evidence in the record indicates that the agency met its burden of proving by clear and convincing evidence that it would have taken the same action regardless of Mr. Kraushaar's disclosures.

Accordingly, the AJ's finding that the Agency proved by clear and convincing evidence that it would have taken the personnel actions against Mr. Kraushaar even in the absence of his protected disclosures is supported by substantial evidence and was not arbitrary, capricious, or an abuse of discretion.