I would affirm the judgment of the United States Claims Court.

NEWMAN, Circuit Judge, with whom SMITH, Circuit Judge joins, dissenting.

I generally agree with Judge Smith's opinion in dissent, and offer the following additional remarks.

Both sides of this issue pose questions that are inappropriate for judicial answer, yet answer we must. The literal words of the statute, on which Judge Smith's opinion turns, are challenged by the fact that DOD has apparently never implemented those words; this in turn is balanced by the contrary reading of the statute by HEW (the agency charged with administering the statute). The 10th Circuit has held one way, and the Texas arbitrators (split 2–1) and the Claims Court held the other way. The legislative history can support both interpretations, as the preceding opinions demonstrate at length.

No fundamental law of nations or peoples is at stake; rather, at stake is the choice of Congress on how to aid both the blind and military recreation. This is a decision of national policy, and it cries for the voice of Congress, not a court's conclusion that Congress did not intend the legislation that it enacted.

Until that voice is heard, I conclude that the balance is on the side of the position supported by Judge Smith. This result does not require explaining away the plain words of the statute, as is eloquently done by the majority of the court. I find it anomalous to conclude that the House and Senate * believed that the simple clause "within retail sales outlets" really means "anywhere on the base". Although the government has cited precedent for judicial rewrite of acts of Congress, none of this authority goes as far as the dramatic rewrite advanced by the court.

Anthony R. HAMBSCH, III, Petitioner,

v.

**DEPARTMENT OF The TREASURY,**
United States Secret Service,
Respondent.

Appeal No. 85–2681.

United States Court of Appeals,
Federal Circuit.

July 3, 1986.

---

**77.** *Id.* at 25,339.

Brian W. Shaughnessy, Shaughnessy, Borowski & Gagner, of Washington, D.C., argued, for petitioner.

Ralph A. Mittelberger, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With him on brief, were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Asst. Director, James Snyder, Office of Legal Counsel, U.S. Secret Service, Washington, D.C., of counsel.

Before DAVIS and NIES, Circuit Judges, and SWYGERT, Senior Circuit Judge.[*]

SWYGERT, Senior Circuit Judge.

This case concerns a decision of the Merit Systems Protection Board ("MSPB" or "the Board") affirming the Department of the Treasury's decision to remove the petitioner, Anthony R. Hambsch, from the Department of the Treasury's Uniformed Secret Service Division ("the Service"). It requires this court to consider, among other things, the constitutionality of a regulation of the Service that limits the right of members of that Division to travel outside of the Washington, D.C. metropolitan area. The MSPB found that the regulation applied to the petitioner, that it did not impose an impermissible burden on the petitioner's right to travel, and that the Department of Treasury properly removed the petitioner from his job as a Secret Service agent. We affirm.

In June 1984 the petitioner was on unpaid leave status because he was allegedly unable to work as a result of a serious injury incurred in an accident on November 12, 1983 and subsequent surgery, and he had no remaining paid sick leave.[1] A regulation of the Uniformed Division required officers on sick leave to obtain permission before leaving the Washington metropolitan area. The petitioner had decided in March or April that he wanted to go on vacation in June to Ocean City, Maryland (which is outside the Washington DC area) with his fiancee and members of his family.

Although he believed that the regulation was inapplicable to him because he was on unpaid leave, and not sick leave, the petitioner attempted on June 27, 1984 to comply with the regulation, presumably because he had earlier lost a grievance in which he had claimed that the regulation did not apply to officers on unpaid leave. The Chief of the Uniformed Division, Frederick Walzel, denied the petitioner's request, and that denial was subsequently affirmed by the deputy assistant director. The petitioner was instructed by the chief and deputy chief not to leave the Washington metropolitan area.

The petitioner nonetheless went to Ocean City on July 3, 1984 where he was observed by Secret Service officials. Hambsch's home was placed under surveillance, and the Service made numerous telephone calls there from July 3 to July 7, allegedly to order the petitioner back to duty. On July 6 other Service officials photographed and videotaped the petitioner at Ocean City. At no point during this surveillance did members of the Service approach the petitioner and inform him that he was to report to work.

On July 9, 1984 the petitioner was interviewed by Inspector Rehkemper who advised the petitioner that he was investigating the petitioner's whereabouts from July 2 through July 8, 1984. The petitioner refused to answer questions, although he was advised that his refusal could result in disciplinary action, including removal. In a second interview, after being told that he could be "as vague as he wanted" in his answers, the petitioner signed under oath a written statement that from July 2 through July 7 he had been in Annapolis and Cape St. Claire, Maryland. In a subsequent third interview, he reaffirmed this written statement. The petitioner did not change his story even after being shown the photographs and videotape and after being told that other officers had seen him in Ocean

---

[*] Honorable Luther Merritt Swygert, U.S. Senior Circuit Judge for the Seventh Circuit, sitting by designation.

1. The petitioner claims that the injury occurred while he was on duty, and he has filed suit on that claim in the United States Claims Court. The Service maintains that the accident occurred while he was off-duty.

City on July 3, 1984. The petitioner's request for an attorney or for the right to tape record the interrogations was denied.

On August 30, 1984 Chief Walzel proposed the petitioner's removal for (1) failure to comply with Uniformed Division regulations; (2) insubordinate refusal to comply with a supervisory directive; and (3) falsification of fact and failure to reply to questioning during an official investigation. The petitioner, through his attorney, responded both in writing and orally. Assistant Director Edward Pollard found, however, that the charges were fully supported by the evidence and decided that the petitioner's proposed removal would become effective on January 11, 1985.

The petitioner appealed to the MSPB. At the hearing before the presiding official, he claimed that the surveillance of him and the denial of his application to leave the Washington metropolitan area were in reprisal for his having filed, in April 1984, a grievance against Senior Staff Inspector Bernard Kotarski, and for his union activities. In that grievance, the petitioner alleged that Kotarski had made false statements about him and had committed other improper acts. At the hearing he alleged that, in retaliation, in June 1984 Kotarski falsely told Chief Walzel that the petitioner

had abused his sick leave, and another official falsely alleged that the petitioner had been improperly engaging in independent law enforcement activities. He claimed that in June 1984 the Service decided to target him for investigation for abuse of sick leave and involvement in illegal activities. The petitioner also claimed that the Division had no excuse for denying him permission to leave the Washington metropolitan area. He intimated that the Division deliberately denied the permission hoping that it could catch him violating the order. He also suggested that the Service made no real attempt to inform him during July 3 through July 7, 1984 that he had been cleared by the Police and Fireman's Clinic physician to return to duty, although he admitted at the hearing that he was aware by July 3, 1984 that he had been found fit to return to duty with full benefits commencing on July 2, 1984. At the hearing he further argued that the Service's intense surveillance of his premises when it knew he was not there demonstrated the Service's bad faith.

**I**

■ The petitioner raises many issues on appeal, only two of which merit any extended discussion:[2] (1) does a regulation

---

**2.** The MSPB's determination that the Secret Service had proved all three charges by a preponderance of the evidence is supported by substantial evidence. *See* 5 U.S.C. § 7703(c) (1982). Substantial evidence means "such relevant evidence as might be accepted by a reasonable person as adequate to support the conclusion reached." *Weston v. U.S. Department of Housing and Urban Development,* 724 F.2d 943, 948–49 (Fed.Cir.1983). The petitioner admitted that he did not comply with the regulation, that he left the Washington, D.C. area in defiance of a supervisory directive, that he refused to answer questions during the investigation, and that he signed a statement that he was not in Ocean City, Maryland between July 2 through July 7. The fact that he may have been coerced into making a statement is irrelevant because he never contended that he was coerced into making a "false" statement. Therefore his quasi-"Jencks Act" claim that he was also denied access to Officer Rehkemper's handwritten notes taken during the interrogation or to cross-examine witnesses regarding the coercive atmosphere of the interrogations are also without merit

since they do not show that he was coerced into making a false statement.

There is also no merit to the petitioner's claim that the Secret Service failed to demonstrate the required nexus between his removal for the efficiency of the Service and his misconduct. Although it can be argued that commission of any one of the three offenses might not justify removal, in our view, a person who violates a department regulation, defies a supervisory directive, and then first refuses to answer any questions posed during an investigation and later blatantly lies, clearly compromises the efficiency as well as the integrity of the Service. The petitioner's past disciplinary record also adds to the reasonableness of the penalty. The petitioner's belief that the regulation did not apply to him has no relevance in this regard because it does not justify his blatant falsehoods.

Finally, we believe that the MSPB reasonably concluded that the regulation applies to officers such as the petitioner who are on LWOP status solely because they have no paid sick leave remaining. The regulation applies to members

of the Department of Treasury's Uniformed Secret Service Division that requires Secret Service officers to obtain permission from the Chief of the Division before leaving the Washington metropolitan area while on sick leave impose an impermissible burden on the petitioner's constitutional right to travel; and (2) is the MSPB's determination that the petitioner was not a victim of reprisal for his protected activities supported by substantial evidence?

### A

The regulation at issue in this case provides:

> *Leaving the Metropolitan Area While on Sick Leave.* Members while on sick leave may not leave the Metropolitan area unless granted permission by the Chief. Members who request this permission will report to the clinic in person and obtain an SSF 2029B from the Clinic Liaison Sergeant and present it to their District Doctor. Members will then deliver the form to the Deputy Chief, Administration and Program Support, for appropriate action. Approval of the request may be granted for recuperative purposes or emergency cases.

■ The Service urges us to adopt the rational basis test rather than the strict scrutiny test for determining the constitutionality of this regulation. Courts have differed over the appropriate test to be applied in cases such as the one at bar. *Compare Pienta v. Village of Schaumburg,* 710 F.2d 1258, 1260 (7th Cir.1983) ("strict scrutiny"), *with Philadelphia Lodge, No. 5 v. City of Philadelphia,* 599 F.Supp. 254 (E.D.Pa.1984) ("rational basis"), *aff'd mem. sub nom. Local 22, Intern. Assoc. of Firefighters, AFL–CIO v. City of Philadelphia,* 779 F.2d 43 (3d Cir. 1985); *Loughran v. Codd,* 432 F.Supp. 259,

263 (E.D.N.Y.1976) (same), and *Gissi v. Codd,* 391 F.Supp. 1333, 1336–37 (E.D.N.Y. 1974) (same). *See also Shawgo v. Spradlin,* 701 F.2d 470, 483 (5th Cir.), *cert. denied sub nom. Whisehunt v. Spradlin,* 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 345 (1983) (to sustain attack on police personnel regulations, officers must demonstrate that there is no rational connection between the regulation and promotion of safety of persons and property). We agree with the Service, based on the reasoning set forth in *Philadelphia Lodge, No. 5,* that the rational basis test governs.

■ Under the rational basis test, the regulation to be constitutional must be rationally connected in a non-arbitrary fashion to the Service's interest in fostering public safety by contributing to the efficient operations of the Service. *Kelly v. Johnson,* 425 U.S. 238, 247–48, 96 S.Ct. 1440, 1445–46, 47 L.Ed.2d 708 (1976); *Shawgo,* 701 F.2d at 483.

■ The regulation in this case easily survives under this test. The regulation is narrowly drawn, requiring only that the officer consult with his treating physician at the Clinic and then obtain the approval of the Chief before leaving the metropolitan area. In addition, it was brought out in oral argument that "the metropolitan area" referred to in the regulation apparently encompasses a broad geographical area— as far away as Annapolis, Maryland which is some fifty miles from Washington, D.C. Finally, the petitioner has made no allegation that compliance with the regulation would prohibit him from freely exercising his religious beliefs, from voting, or from freely associating with others. *Cf. Pienta,* 710 F.2d at 1260–61.

This narrow restriction is rationally related to the Service's function of protecting the President and Vice President and other

---

of the Service who are on sick leave, and Officer Hambsch was, in fact, on unpaid sick leave. The petitioner has offered no good rationale why those on unpaid sick leave should be treated any differently under the regulation than those on paid sick leave. In fact, the petitioner advises that issue was decided adversely to him in a grievance proceeding. Even if it were true

that the regulation did not apply to him, this would not justify the petitioner's conduct in failing to follow orders and in lying to his supervisors. *Cf. Dennis v. United States,* 384 U.S. 855, 865, 86 S.Ct. 1840, 1846, 16 L.Ed.2d 973 (1966); *Rodriguez v. Seamans,* 463 F.2d 837, 841 (D.C.Cir.), *cert. denied,* 409 U.S. 1094, 93 S.Ct. 704, 34 L.Ed.2d 678 (1972).

government employees. The efficient operation of the Service in delivering this service requires access to trained manpower. As a result the Service must be able to regulate the departure of Secret Service agents on sick leave from the Washington metropolitan area in the event they are needed for emergency duty. The Service also has an interest in assuring that employees do not abuse sick leave by taking vacations to far-away places.

The petitioner's reliance on *Pienta* is unavailing. In *Pienta* a Village department regulation confined police and civilian employees of the Schaumburg Police Department on injury or sick leave to their residences. Those not hospitalized could only leave their residences when necessary to obtain medical attention. As the Seventh Circuit observed "[i]n effect, these regulations put plaintiffs under house arrest until their return to work. Their rights to vote, to exercise freely their religion by church attendance, to go to court, to attend political or family gatherings, and to travel were infringed." *Id.* at 1260. The court held that this regulation failed both the "rational basis" and "strict scrutiny" tests because the Village could offer no reasoned justification for prohibiting its employees from participating even minimally in community affairs while on sick leave. Clearly, the regulation at issue in *Pienta* was decidedly more restrictive and infringed on many more fundamental rights than the regulation at issue in this case.

In fact, *Pienta* directly supports the result we reach today. The Seventh Circuit suggested that certain regulations restricting the activities of an employee on sick leave would pass constitutional muster under the "strict scrutiny" standard and, *a fortiori*, the rational basis standard:

> Of course, a municipal police department has a legitimate interest in handling sick and injury leave relief policies to assure the ability to carry out its public services. Some restrictions on the activities of an employee on leave are justifiable, and the Department should be entitled to verify whether an employee's

absence from home is consistent with a claim of disability. *Id.* at 1261. As we have already observed, here the challenged regulation is narrowly tailored in that it only confines the officer on sick leave to a very broad geographical area, and it does not, on its face, restrict the officer's free exercise of other fundamental rights.

We, therefore, find the regulation constitutional on its face. We also find the regulations constitutional as applied because, as we have already observed, *see supra* note 2, the regulation can rationally be applied with equal force to those officers on unpaid and paid sick leave. This regulation could thus form the basis for disciplinary action against the petitioner.

### B

The petitioner also makes two claims with regard to his affirmative defense that he was the victim of reprisal. At oral argument we expressed some concern about the use of claims of reprisal as an affirmative defense to disciplinary action. However, we need not elaborate here on those concerns because we find both of the petitioner's claims regarding his reprisal defense to be without merit.

■ The petitioner claims that he was denied due process by the presiding official's failure to let him call witnesses or to cross-examine in depth the Service's witnesses regarding their alleged "retaliatory motives." Pursuant to its statutory power to promulgate regulations to handle appeals and control its own docket, *see* 5 U.S.C. § 7701(a) (1982); *Phillips v. United States Postal Service*, 695 F.2d 1389, 1390–91 (Fed.Cir.1982), the MSPB has conferred broad discretion on the presiding official to make evidentiary rulings. *See, e.g.,* 5 C.F.R. § 1201.62 (1986). As such, here evidentiary rulings are only subject to reversal if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Phillips*, 695 F.2d at 1390.

■ We have reviewed the record in considerable detail and we conclude that the presiding official did not act improperly in excluding some of the petitioner's proferred witnesses. The petitioner failed to demonstrate the relevance to the reprisal issue of the testimony of some of the twenty-three witnesses he described as "essential" or to present the testimony of others in a procedurally correct fashion. Some of the proferred testimony was clearly collateral or minimally probative and, as such, was properly excluded on the ground of undue delay of the hearing. Another witness whose testimony the petitioner claims was improperly excluded was apparently never proferred as a witness at the hearing.

Regarding the claim that the presiding official improperly truncated the petitioner's cross-examination of the Service's witnesses, our review of the record indicates that the presiding official was most lenient in permitting the petitioner's counsel to pursue all relevant lines of questioning.

■ The final issue presented for review is whether substantial evidence supports the MSPB's determination that the petitioner was not investigated or removed in reprisal for engaging in protected activities. This issue is closer than the petitioner's other substantial evidence claims, *see supra* note 3, because the petitioner presented at least some evidence from which one might be able to infer that higher ranking officers of the Service were "out to get him." However, we cannot reverse the presiding official's conclusion because the Service presented sufficient rebuttal evidence such that a reasonable person could conclude that the Service's investigation and removal of the petitioner were based upon legitimate employment considerations and were not taken in reprisal for the petitioner's protected activities. *See Weston*, 724 F.2d 943 at 948–49.

To the extent that the petitioner's claim is based upon a challenge to the presiding official's credibility determinations, we reiterate our previous holdings that these determinations are virtually unreviewable, *see DeSarno v. Department of Commerce*, 761 F.2d 657, 661 (Fed.Cir.1985); *Griessenauer v. Department of Energy*, 754 F.2d 361, 364 (Fed.Cir.1985); *cf. Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, ——, 105 S.Ct. 1504, 1513, 84 L.Ed.2d 518 (1985) (trial judge's credibility choice between two witnesses whose testimony is not contradicted by extrinsic evidence "can virtually never be clear error"), and we find nothing in the record in this case to justify our reconsidering those determinations.

*Affirmed.*