824 F.2d 977
 Unpublished disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Garrett V. COLEMAN, Petitioner,
v.
DEPARTMENT OF EDUCATION, Respondent.
 Appeal No. 87-3025.
 United States Court of Appeals, Federal Circuit.
 April 30, 1987.
 
 AFFIRMED.
 Before RICH, DAVIS and SMITH, Circuit Judges.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 The decision of the arbitrator, denying the grievance and thus affirming the removal of the petitioner from his position as a GS-14 Program Analyst with the Department of Education (agency) for unsatisfactory performance, is affirmed.
 
 OPINION
 
 2
 We review the arbitrator's decision in the same manner and under the same conditions as if the matter had been decided by the Merit Systems Protection Board. 5 USC 7121(f). Thus, our scope of review is limited to that set forth in 5 USC 7703(c). See American Fed'n of Gov't Employees, Local 2718 v. Department of Justice, 768 F.2d 348, 350 (Fed.Cir.1985).
 
 
 3
 The arbitrator heard the testimony of both the petitioner, Garrett Coleman, and his supervisor, Frank Nassetta, among others. To the extent that the arbitrator's decision is based on credibility determinations, those findings are largely unreviewable. See Hambsch v. Department of the Treasury, 796 F.2d 430, 436 (Fed.Cir.1986). Because the decision is supported by substantial evidence and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we affirm.
 
 The GPAS Plan
 
 4
 Coleman offers several reasons why his General Performance Appraisal System (GPAS) plan constituted an abuse of agency discretion or otherwise violated applicable legal standards, including: (1) the standards were not sufficiently objective because they were overly-detailed and thus confusing; (2) the standards violated Sec. 22.02 of the union's collective bargaining agreement which requires that performance standards be "fair, equitable and job related"; and (3) the standards violated agency regulation PMI 430-2 which provides that performance standards for like jobs should be as consistent as possible.
 
 
 5
 Contrary to petitioner's brief, the arbitrator did not find the performance standards confusing.[1] Indeed, the arbitrator found that the standards met the test for objectivity set forth in Wilson v. Department of Health and Human Services, 770 F.2d 1048, 1052 (Fed.Cir.1985), and that the amount of detail was necessary to eliminate misunderstanding. These findings are supported by substantial evidence, and Coleman's argument that the standards were confusing must be rejected.
 
 
 6
 To support his contention that the performance standards were not "fair, equitable and job related," Coleman argues that he was singled out for unique standards either to get rid of him or because he disagreed with his supervisor. The arbitrator found, however, that Nassetta did not impose the standards as a form of retaliation. This finding is also supported by substantial evidence. We have no doubt that there was personal animosity between Coleman and Nassetta, as Nassetta considered Coleman to be argumentative, disrespectful, and insubordinate at times, but this is not enough to conclude that Nassetta used the standards as a pretext for firing Coleman.
 
 
 7
 The detailed standards did result, however, at least in part, from a long-standing dispute between Coleman and Nassetta over the standards themselves. The arbitrator found that it was due to both this basic disagreement and Nassetta's need to be explicit with Coleman that the standards were so detailed. But considering all the circumstances, as the arbitrator did, we cannot say that the standards were unreasonable. Coleman continually questioned the assignments given him and disagreed with both the objectives of his job performance and the method of evaluating that performance. Nassetta was eventually forced to make clear what he expected from Coleman and that Coleman would be evaluated on that basis, not on his own perception of the job.
 
 
 8
 Finally, we agree that Coleman's unique performance standards did not violate PMI 430-2. The PMI regulation does not require that all like positions have identical performance standards, but only as much consistency as possible. While Nassetta could have used the same standards used for the other GS-14's, there is evidence that Coleman rejected just such a plan.
 
 Reasonable Opportunity to Improve
 
 9
 Coleman argues that he was not given a reasonable opportunity to improve his performance because his supervisor prejudged him, never told him what was expected in terms of minimally satisfactory performance, and did not give him any meaningful assistance to improve his performance. Coleman never raised the issue of minimally satisfactory performance before the arbitrator, and therefore we do not consider it. See Synan v. Merit Systems Protection Board, 765 F.2d 1099, 1101 (Fed.Cir.1985).
 
 
 10
 To show prejudgment, Coleman points to the fact that prior to the opportunity period Nassetta considered him argumentative, disrespectful, and insubordinate, and had judged his past performance as unsatisfactory. Some prejudgment is necessary, however, because an improvement period is required only if the performance is already unacceptable. See 5 USC 4302(b)(6). Furthermore, there is no evidence that Nassetta caused Coleman's failure. To the contrary, the arbitrator found that during the opportunity period, Nassetta assisted Coleman by working with him and giving him detailed instructions. Coleman argues that he testified differently at the arbitration hearing and that Nassetta did not meet regularly with him during the opportunity period. The arbitrator found, however, that these meetings were unnecessary in light of the detailed instructions and work plans which Nassetta provided. Regardless of Coleman's testimony, there is substantial evidence to support the arbitrator's decision that the opportunity period was meaningful and reasonable.
 
 
 11
 Finally, we do not see how the agency's failure to reassign Coleman was also a failure to give him meaningful assistance during his opportunity period. As the arbitrator indicated, this may have been bad faith on the part of other department officials, but there is no indication that Nassetta was involved in any way. The agency was not obligated to reassign Coleman to help improve his performance even if he would have done better elsewhere.
 
 Detail to GAO
 
 12
 Coleman concedes that an agency can remove an employee for unsatisfactory performance exclusively during the opportunity period. He argues instead that the GAO detail was a de facto extension of his opportunity period and therefore it should have been considered.
 
 
 13
 There is no evidence that the agency ever intended to extend the opportunity period beyond April 16, 1985. Nassetta had already extended it three times for a total of 120 days. The detail to GAO, which was non-reimbursable to the agency, was for Coleman's benefit so that he could find another job within the government. The arbitrator correctly concluded that the GAO detail need not be considered.
 
 
 14
 Even if it had been considered, we do not see how it would affect the decision that Coleman's performance was deficient in two critical elements of his regular job. Coleman's performance plan for the GAO detail did not include any critical elements. Moreover, we are not told how, if at all, his duties at GAO related to those critical elements for which his performance was unacceptable, such as the critical element of "Leadership in Area of Specialization."
 
 
 15
 DAVIS, Circuit Judge, dissenting in part.
 
 
 16
 I agree with the court's opinion except for the part headed "Detail to GAO." On that detail, lasting from April 19, 1985 to August 20, 1985, petitioner received an outstanding performance rating, and the detail ended prior to the letter of proposed removal. The arbitrator refused to consider that detail solely on the ground that the agency could limit its consideration precisely to the opportunity period "and it is that performance which is relevant to the issue, not how the grievant [petitioner] performed after that period." Neither of the court's other statements that (a) the detail to GAO was for Coleman's benefit so that he could find another job within the government, and (b) that even if the detail was considered it could not affect the arbitral decision, correctly reflects the arbitrator's decision. The first reflects petitioner's supervisor's view, not that of petitioner, and the second statement was never made by the arbitrator at all.
 
 
 17
 I would remand to the arbitrator to consider the GAO detail because (1) to me this is a peculiar case in which Coleman's two periods of work on detail outside his agency (one prior to the opportunity period and one after) received outstanding ratings while his in between work-for-the-agency obtained less-than-satisfactory ratings, (2) there are strong indications that the agency wanted to "get rid" of petitioner because of dissatisfaction with his personality, and (3) the arbitrator erred (in my view) in holding that the agency could restrict its evaluation to the precise opportunity period even though (a) the agency itself authorized the GAO detail and requested an evaluation from GAO at the end, (b) Mr. Nassetta, the supervisor, evaluated Coleman's performance two months after the GAO detail had started and before GAO had evaluated petitioner, and (c) removal was not proposed until after the GAO detail was completed and GAO's outstanding evaluation for petitioner had been received. In those circumstances, the refusal to consider the outstanding GAO evaluation seems to me an abuse of discretion on the part of the agency, and a similar abuse of discretion by the arbitrator in condoning that refusal.
 
 
 
 [1]
 The petitioner's brief at page 15 misquotes the arbitrator's opinion as saying "the performance standards for the grievant were much more detailed and confusing than the standards for other GS-14's in the Division." The only confusion was over which elements of the plan were critical. Nassetta remedied this problem in his November 30, 1984, memorandum in which he indicated that all three elements were critical