95 F.3d 1166
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
June Y. HILL, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 96-3170.
 United States Court of Appeals, Federal Circuit.
 Aug. 6, 1996.
 
 Before ARCHER, Chief Judge, MAYER and PLAGER, Circuit Judges.
 PER CURIAM.
 
 
 1
 June Y. Hill petitions for review of a decision of the Merit Systems Protection Board, Docket No. SF08431950652-I-1 (Oct. 20, 1995), which affirmed the Office of Personnel Management's reconsideration decision denying Hill's application for the lump-sum death benefit of her mother, Viola J. Winston. The initial decision became final when the board denied Hill's petition for review on February 5, 1996. We affirm.
 
 
 2
 We review the board's decision within precisely defined statutory limits. 5 U.S.C. § 7703(c) (1994); see Hayes v. Department of the Navy, 727 F.2d 1535, 1537 (Fed.Cir.1984). We must affirm the decision unless we determine it was (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c). Due to the narrow scope of our review, the board's evaluation of witness credibility is virtually unreviewable. Hambsch v. Department of the Treasury, 796 F.2d 430, 436 (Fed.Cir.1986); see also Watson v. Department of Justice, 64 F.3d 1524, 1531 (Fed.Cir.1995).
 
 
 3
 Hill had the burden of proving, by a preponderance of the evidence, that she was entitled to her mother's lump-sum death benefits. See Cheeseman v. OPM, 791 F.2d 138, 141 (Fed.Cir.1986). Pursuant to 5 U.S.C. § 8342(c) (1994), Hill would be entitled to her mother's benefits if either 1) her mother had formally designated Hill as her beneficiary and OPM had received the designation prior to her mother's death, or if 2) Hill had proved that her mother did not have a surviving spouse.
 
 
 4
 At a hearing before the board, Hill testified that she requested forms from the Department of the Navy so that Winston could designate her as beneficiary before death. Hill further testified that the Navy gave her Standard Form 1152, for designating beneficiaries for unpaid compensation of deceased civilian employees, rather than the appropriate Standard Form 2802, entitled "Designation of Beneficiary." The board found that Winston did not properly execute a designation/change of beneficiary form designating Hill as her beneficiary before death. Even accepting Hill's testimony as true, Standard Form 1152 specifically excludes application to the OPM Retirement or Group Life Insurance Acts, and the executed Standard Form 1152 was not filed with OPM before Winston's death as required by statute to designate a beneficiary for lump-sum death benefits. 5 U.S.C. § 8342(c). Additionally, OPM v. Richmond, 496 U.S. 414 (1990), dictates that even if Navy personnel supplied Hill with the incorrect document, the government is not equitably estopped from enforcing the statutory requirements for disbursing a benefit.
 
 
 5
 Despite lack of formal designation as beneficiary, Hill would still be entitled to Winston's benefits as one of Winston's children if Hill could prove that there was no widower otherwise entitled to the benefits. 5 U.S.C. § 8342(c). Although Winston's death certificate indicated that she was married to Charles Winston, Hill's natural father, Hill testified that she could find no evidence of a marriage or a divorce of her parents. She also testified that she had always believed her parents were married, but had divorced in 1965. She did not, however, produce any documents from Arkansas, the state where her parent's were believed to have been married, to either prove or disprove a marriage or divorce. Contrary to Hill's testimony, two close friends of the deceased testified that Winston spoke as if she was married to Charles Winston, and that she never spoke of a divorce. One of the two friends testified that Winston "spoke of herself as being 'separated,' not divorced."
 
 
 6
 Based on this testimony, the board determined that Winston was married to Charles Winston, and that they were never legally divorced. The Viola findings are supported by substantial evidence and must be sustained.