NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ANN SMITH-NWAGWU,**
*Petitioner,*

v.

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent.*

---

2010-3181

---

Petition for review of an arbitrator's decision in FMCS Case No. 09-56875-3, by Robert W. Kilroy

---

Decided: November 7, 2011

---

M. JEFFERSON EUCHLER, Law Office of M. Jefferson Euchler, of Virginia Beach, Virginia, for petitioner.

JANE W. VANNEMAN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRIAN M. SIMKIN, Assistant Director.

---

Before RADER, *Chief Judge*, PROST, and MOORE, *Circuit Judges*.

PER CURIAM.

The arbitrator sustained the decision of the Director of the Veterans Affairs Medical Center, Durham, North Carolina ("Durham VA Medical Center"), to remove Ann Smith-Nwagwu ("Smith-Nwagwu") from her position as a certified nursing assistant. Because the arbitrator's findings are supported by substantial evidence, this court affirms.

I

Smith-Nwagwu was a certified nursing assistant working the night shift (11:30 p.m. to 8:00 a.m.) at the Durham VA Medical Center. The Director of the Durham VA Medical Center removed her from her position based upon three charges: (1) absence without leave, (2) failure to follow proper leave procedures, and (3) inappropriate conduct towards her supervisor. The facts leading up to her removal are as follows.

In August 2008, Smith-Nwagwu made several requests for an alternate work schedule. She wanted her shift to begin one hour early and to end two hours early (10:30 p.m. to 6:00 a.m.) so that she would not be late for an 8:00 a.m. Thursday class. Dawn Huffstetler ("Huffstetler"), the nurse manager of her unit, denied the requests because the heaviest workload for nursing assistants on the night shift occurs between 6:00 a.m. and 8:00 a.m., when patients are waking up, having their vital signs checked, and their intake and output recorded. Huffstetler informed Smith-Nwagwu that, while she could not pre-approve the request to leave early, Smith-Nwagwu could ask for permission to leave early at 6:30 a.m. on the day of her shift when Huffstetler would be

able to determine the needs of the unit for that morning. Alternatively, Smith-Nwagwu could change her schedule to be off work every Thursday morning.

On Tuesday, August 26, 2008, Smith-Nwagwu requested permission to leave early the following Thursday morning. Huffstetler again informed her that she could not pre-approve the request to leave early and advised Smith-Nwagwu to contact her at 6:30 a.m. on Thursday, at which time she would grant the request if everything was settled on the floor. On that Thursday, Smith-Nwagwu told the charge nurse on duty that she was leaving and left at 6:00 a.m., without contacting Huffstetler or the off-tour coordinator (who is in charge of all units and lines up coverage as needed).

On August 29, 2008, Huffstetler held a counseling meeting with Smith-Nwagwu and her union representative regarding her unauthorized absence the previous day. Huffstetler testified that during this meeting, Smith-Nwagwu became so angry that her union representative had to remove her from the room. According to Huffstetler, Smith-Nwagwu threw a sheet of paper at her and also pointed a finger at her and said, "I've got your number." Huffstetler felt personally threatened by this behavior and filed a police report regarding this incident.

Following this counseling meeting, Smith-Nwagwu did not work any Wednesday night/Thursday morning shifts in September. Instead, she called in and requested sick leave for September 4th and 11th and used her annual leave for September 18th. On Wednesday, September 24, 2008, Smith-Nwagwu did not report for duty and did not contact the off-tour coordinator. At 1:25 a.m. on Thursday, September 25, 2008, Smith-Nwagwu called and requested sick leave. The off-tour coordinator told her that she was absent without leave ("AWOL") from 11:30

p.m. until 1:25 a.m. but granted sick leave for the rest of the shift.

The next day, Huffstetler requested disciplinary action against Smith-Nwagwu, recounting these various incidents as well as the "decrease in the professional relationship between [her and Smith-Nwagwu since the counseling meeting] as evidenced by [Smith-Nwagwu's] unwillingness to make eye contact with [her] or speak to [her] even when spoken to." J.A. 147. The Associate Director of Nursing Service issued a notice of proposed removal on November 13, 2008. Charges 1 and 2—absence without leave and failure to follow proper leave procedure—were based on her unauthorized absence from 11:30 p.m. on September 24, 2008 to 1:25 a.m. on September 25, 2008. Charge 3—inappropriate conduct towards her supervisor—was based on her conduct during the counseling meeting on August 29, 2008. The notice also relied upon her record of previous discipline in 2006, noting that this would be taken into account in determining the proper disciplinary action. In 2006, Smith-Nwagwu had admitted to the charges of: (1) failing to properly request leave, (2) unauthorized absence, and (3) failure to follow the instructions of the supervisor having responsibility for her work. The Director of the Durham VA Medical Center ("Director") had suspended her for ten days in lieu of removal, with the warning that future misconduct could result in removal.

After considering all of the information available to him, the Director issued a notice of decision on December 19, 2008, removing Smith-Nwagwu from employment, effective January 2, 2009. The union filed a grievance on January 16, 2009 and invoked arbitration. The arbitrator held that the grievance was timely because it had been filed within thirty days of Smith-Nwagwu's removal date. After holding a hearing, the arbitrator sustained the

removal decision, finding just cause to terminate Smith-Nwagwu's employment based on all three charges. Smith-Nwagwu timely appealed the arbitrator's decision. This court has jurisdiction under 5 U.S.C. §§ 7121(f), 7703.

## II

In reviewing an arbitrator's decision affecting a federal employee, this court applies the same standard of review as it would in an appeal from the Merit Systems Protection Board. 5 U.S.C. § 7121(f). This court will set aside the arbitrator's findings only if they are: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

Charges 1 and 2—absence without leave and failure to follow proper leave procedure—both arise from Smith-Nwagwu's absence from work from 11:30 p.m. on September 24, 2008 to 1:25 a.m. on September 25, 2008. The governing collective bargaining agreement provides that sick leave is to be granted when an employee:

1. Receives medical, dental, or optical examination or treatment.

2. Is incapacitated for the performance of duties by sickness, injury, pregnancy, or confinement.

3. Is required to give care and attendance to an immediate family member who is afflicted with a contagious disease.

4. Would jeopardize the health of others by being present on duty after exposure to a contagious disease.

J.A. 29. As a general matter, "[e]mployees should request, in advance, approval of anticipated leave." J.A. 28. However, "an employee who is *incapacitated for duty* [must] notify the immediate supervisor or designee (or to have any responsible person make the notification for the employee) at the work site *as soon as possible but no later than two hours after the employee is scheduled to report for duty* unless mitigating circumstances exist." J.A. 29 (emphases added). In other words, while employees are generally required to request leave in advance, an employee that is "incapacitated for duty" has up to two hours after the beginning of a shift to request leave. This narrow exception provides leeway for situations where an employee unexpectedly falls ill or is injured and thus is not able to notify her supervisor prior to the start of her shift. It does not suggest that employees seeking sick leave generally need not request leave in advance.

It is undisputed that Smith-Nwagwu did not show up for work on September 24, 2008 and did not contact the off-tour coordinator to request leave prior to the start of her shift. Smith-Nwagwu testified that she did not call in requesting sick leave until 1:25 a.m. on September 25, 2008 because she had overslept. She explained that she had been up all day taking care of her sick daughter and that she had also been taking pain medication for a work injury from June 2008. Taking care of a sick family member is a legitimate basis for requesting sick leave, and sick leave was in fact granted for the remainder of her shift. However, Smith-Nwagwu had to request such leave in advance, unless she was "incapacitated." J.A. 29.

The arbitrator found that Smith-Nwagwu had not been "incapacitated" but rather had merely overslept. Implicit in the arbitrator's finding is his rejection of Smith-Nwagwu's testimony that her pain medication had "incapacitated" her by making her unable to function.

This finding is supported by the record. On direct examination, Smith-Nwagwu testified that her pain medications "were too much" such that she "couldn't function." J.A. 120. On cross-examination, however, Smith-Nwagwu admitted that she had been on pain medication since June 2008, and that over time, the strength of her prescription had been reduced. By September 2008, she had actually been taking a weaker dose of pain medication, compared to the dosages she had previously been on, which had not prevented her from working shifts in August. Moreover, Smith-Nwagwu had not claimed to have been incapacitated by medication at any point prior to arbitration despite having received the notice of proposed removal, which clearly informed her that she had the right to respond orally or in writing to show "why this notice is inaccurate and any other reasons why this action should not be effected." J.A. 1. For these reasons, the arbitrator could have reasonably found that her testimony about not being able to function due to medication was not credible and thus concluded that she had not been "incapacitated." This court defers to the credibility findings of the arbitrator. *See Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986) (the presiding officer's credibility determinations are "virtually unreviewable"). Because Smith-Nwagwu did not contact the off-tour coordinator to request leave until one hour and fifty-five minutes after the start of her shift, she was absent without leave during this time and had failed to follow proper leave procedure. Accordingly, the arbitrator's finding that the VA had established charges 1 and 2 is supported by substantial evidence.

Likewise, the arbitrator's finding that the VA had established charge 3—inappropriate conduct towards her supervisor—is supported by substantial evidence. Charge 3 arose from Smith-Nwagwu's conduct during the counsel-

ing meeting on August 29, 2008. Huffstetler testified that during this meeting, Smith-Nwagwu "appeared to get very angry, her fists were clenched, she'd moved up to the edge of her seat, and she was getting louder and louder in her responses to me to the point that her Union Rep removed her from the room, took her out in the hall for several minutes to try to calm her down." J.A. 55. According to Huffstetler, Smith-Nwagwu threw a sheet of paper at her, and when she left the office, she pointed a finger at Huffstetler and said, "I've got your number." Smith-Nwagwu denied clenching her fists, throwing a paper, and pointing her finger at Huffstetler, but she admitted to raising her voice and saying, "I've got your number." The only other person to witness this encounter was Smith-Nwagwu's union representative, who did not testify.

The arbitrator had to determine which version of the facts more accurately described the encounter and found Huffstetler's testimony more credible. The arbitrator concluded that Smith-Nwagwu's "splenetic and intemperate remarks, coupled with her Union representative's action in taking her into the hallway, demonstrate a hostile intent in her comment, 'I've got your number.'" J.A. 23. In light of the totality of the circumstances, the arbitrator found that the Smith-Nwagwu had displayed "patently inappropriate conduct" supporting charge 3. *Id.* Applying the deference owed to the arbitrator on such a fact-based determination, this court finds that the arbitrator's finding is supported by substantial evidence.

Given the serious nature of the charges and Smith-Nwagwu's past disciplinary record, the arbitrator did not abuse his discretion in sustaining the penalty of removal as within the range of reasonableness. *See Lachance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999) (this court will not disturb an agency's choice of penalty unless it is

"totally unwarranted"). This court therefore affirms the arbitrator's decision sustaining Smith-Nwagwu's removal.

**AFFIRMED**