NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KIESHA D. LEWIS,**
*Petitioner*

**v.**

**DEPARTMENT OF THE TREASURY,**
*Respondent*

---

2020-1684

---

Petition for review of the Merit Systems Protection Board in No. DC-1221-19-0365-W-2.

---

Decided: September 8, 2020

---

KIESHA D. LEWIS, Bowie, MD, pro se.

LAUREN MOORE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by ETHAN P. DAVIS, ALLISON KIDD-MILLER, ROBERT EDWARD KIRSCHMAN, JR.

---

Before REYNA, CLEVENGER, and CHEN, *Circuit Judges*.

PER CURIAM.

Pro se appellant Kiesha Lewis appeals from a decision of the Merit Systems Protection Board (Board) denying Ms. Lewis's request for corrective action under the Whistleblower Protection Act (WPA). Because we conclude that the Board's determinations are neither arbitrary nor capricious nor contrary to law and are supported by substantial evidence, we *affirm*.

## BACKGROUND

Ms. Lewis was employed by the Internal Revenue Service (the Agency) as a Frontline Manger for the Enterprise Program Management Office Web Applications (Web Apps) Division starting in January 2017. In July 2017, she sent an email to her second-level supervisor, Ramona Henby, and her first-level supervisor, Kevin McCreight, claiming that Mr. McCreight was prematurely allowing contractors to begin working on a contract before they were properly cleared to perform the work. S.A. 38.[1] Ms. Henby discussed the email with Mr. McCreight and concluded that Mr. McCreight's actions were proper.

In August 2017, Ms. Lewis received an opportunity to go on detail to be a Labor and Employment Relations Specialist. This detail was not reimbursable, meaning the Agency would still have to pay Ms. Lewis's salary. The Agency was particularly sensitive to the not reimbursable status because Web Apps was about 50% understaffed, and onboarding a new employee or contractor could take several months, delaying important projects with stringent deadlines. S.A. 20. Mr. McCreight, Ms. Henby, and Ms. Linda Gilpin, Ms. Lewis's third-level supervisor, agreed in an email conversation that the agency did not

---

[1] S.A. refers to the supplemental appendix filed with the Agency's brief. Ms. Lewis also filed an appendix at the end of her opening brief, which is cited as App'x.

have the funds to pay for Ms. Lewis's detail and backfill her position in Web Apps. App'x 91–92. After consulting with human resources to ensure they were permitted to deny the detail for this reason, the group decided to deny Ms. Lewis's request to go on the detail. *Id.*

In November 2017, Ms. Lewis learned that Mr. McCreight rated Ms. Lewis in her performance review as "met expectations" (also referred to as "met"), and in response she filed a complaint with the Treasury's Inspector General for Tax Administration (TIGTA) alleging that Mr. McCreight engaged in poor and improper management practices. TIGTA investigated these allegations and issued a report summarizing its findings. Part of the TIGTA report summarized statements from Mr. McCreight and Ms. Henby about their respective decisions on Ms. Lewis's performance review. Mr. McCreight explained that "Lewis was a first time Manager, and had been in the position for less than a year and while she performed some tasks well, she was lacking in others." App'x 88. For her part, Ms. Henby described that "Lewis did well in some aspects of her job but had difficulties with other aspects. For example, Lewis was quick to point out variances in the accounting for the group. . . . She believed that Lewis struggled in getting past the variances and was unable to find viable solutions to the problems." App'x 82. TIGTA did not refer the case for any further action.

Ms. Lewis resigned in November 2017. After she resigned, the Agency issued Ms. Lewis's finalized performance evaluation, rating her as a "met."

Thereafter, Ms. Lewis filed a complaint with the Office of Special Counsel (OSC),[2] alleging that a number of

---

[2] Ms. Lewis also filed a second complaint adding allegations against her former supervisor for another alleged protected disclosure. The Board determined the

retaliatory personnel actions were taken by the Agency in violation of the WPA.  OSC terminated its inquiries after finding no violation.  *Lewis v. Dep't of the Treasury*, No. DC-1221-19-0365-W-2, 2020 WL 997127, at *2–3 (M.S.P.B. Feb. 27, 2020).  Ms. Lewis appealed that decision to the Board, which denied all of Ms. Lewis's allegations of WPA violations.

As to the performance evaluation rating, the Board found that Ms. Lewis's July 2017 email regarding alleged improper contractor work was a protected disclosure.  The Board then found that based on the knowledge-timing test,[3] Ms. Lewis had established that a reasonable person could conclude that her July 2017 email was a contributing factor to her performance evaluation and rating.  As a result, the Agency was required to prove by clear and convincing evidence that it would have given Ms. Lewis the same performance rating in the absence of Ms. Lewis's protected disclosure.  The Agency presented declarations from Mr. McCreight, Ms. Henby, and Ms. Gilpin.  The declarations asserted that Mr. McCreight filed his performance evaluation to Ms. Henby, rating Ms. Lewis as "met" because while she met the standards for an "exceed" rating in three of her four Commitments, she did not "exceed" in the fourth and her Requirements were ranked as "met."  S.A. 41.  Ms. Henby then reviewed this evaluation and

---

disclosures did not qualify as protected disclosures. Ms. Lewis has not challenged the Board's determination regarding this second OSC complaint.

[3] The knowledge-timing test creates a presumption that a personnel action was retaliatory if taken by a person with knowledge of the protected disclosure within a period of time such that a reasonable person could conclude that the protected disclosure contributed to the agency's decision to take the personnel action.  *Reid v. Merit Sys. Prot. Bd.*, 508 F.3d 674, 678–79 (Fed. Cir. 2007).

concurred, explaining that although Ms. Lewis was on the border between "met" and "exceeds," she needed more points to meet the requirements of an overall "exceeds" rating. *Id.* at 46. Ms. Henby also considered the performance evaluation for the first few months of the 2017 fiscal year from Ms. Lewis's previous supervisor in a different Agency unit before she joined Web Apps, which rated Ms. Lewis as "met." *Id.* Ms. Henby then sent her assessment to Ms. Gilpin. Ms. Gilpin discussed the rating with Ms. Henby and determined that the "met" rating was appropriate. *Id.* at 49–50. The Board found that the Agency met its burden of proving that it would have rated Ms. Lewis as "met" regardless of the July 2017 email.[4] *Id.* at 17–19. The Board reached this conclusion because the declarations showed that while Ms. Lewis was close to the "exceeds" level, she did not timely meet one of her commitments, and while she had performed exceptionally in some aspects of her job, she had merely met expectations in others. *Id.*

Regarding the detail opportunity, the Board similarly found that Ms. Lewis established that her protected disclosure was likely a contributing factor to the Agency's decision through the knowledge-timing test. *Id.* at 12–13. The Board continued, finding that the Agency made this decision because the detail was not reimbursable, and Web Apps did not have the funding to continue paying Ms. Lewis's salary and backfill the position. *Id.* at 19–21. This situation was further exacerbated by the fact that Web Apps was already about 50% understaffed. *Id.* at 20. The Board further found that the Agency had shown that there would have been a significant delay in work needed for Web Apps while any new employee or contractor was onboarded. *Id.* at 21. As a result, the Board found clear and convincing evidence that the Agency would have

---

[4] The Board did not hold an in-person hearing because Ms. Lewis waived the hearing. S.A. 1.

denied Ms. Lewis's detail opportunity regardless of the protected disclosure.

Ms. Lewis timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our standard of review is limited and requires this court to affirm a decision of the Board unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Substantial evidence is "relevant evidence" that "a reasonable mind might accept as adequate to support a conclusion." *McLaughlin v. Office of Pers. Mgmt.*, 353 F.3d 1363, 1369 (Fed. Cir. 2004).

The WPA prohibits an agency from taking a personnel action because of any whistleblowing "disclosure" or activity. 5 U.S.C. § 2302(b)(8)–(9). An employee who believes she has been subjected to illegal retaliation must prove by a preponderance of the evidence that she made a protected disclosure that contributed to the agency's action against her. *See Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1367 (Fed. Cir. 2012). "If the employee establishes this *prima facie* case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure.'" *Id.* at 1364 (quoting 5 U.S.C. § 1221(e)). If the agency does not show by clear and convincing evidence that it would have taken the same action absent the whistleblowing, the agency's personnel action must be set aside. *See Siler v. Envtl. Prot. Agency*, 908 F.3d 1291, 1298 (Fed. Cir. 2018).

In this appeal, Ms. Lewis argues that the Board abused its discretion in finding the Agency's witnesses to be credible and that the Board incorrectly interpreted and applied

5 U.S.C. § 4302 as well as various provisions of the Internal Revenue Manual (IRM 6.430 and 6.335.1.12.15–17).  The challenges allege that Mr. McCreight and the Agency did not follow the proper rules when determining Ms. Lewis's performance evaluation rating or when denying her the opportunity for her detail.  But even if Ms. Lewis is correct as to these matters, she has not explained how such irregularities undercut the Agency's evidence that it would have given Ms. Lewis the same performance rating and denied the detail in the absence of her July 2017 email.  Regardless, we see no misapplication of 5 U.S.C. § 4302 or IRM 6.430.  Moreover, IRM 6.335.1.12.15–17 do not apply to detail assignments.

Substantial evidence supports the Board's determination that the Agency would have issued Ms. Lewis a "met" rating regardless of her protected disclosure.  The record evidence demonstrates that while Ms. Lewis may have satisfied the "exceeds" standard in some areas, she did not satisfy that standard in others.  As Mr. McCreight stated, "Lewis was a first time Manager, and had been in the position for less than a year and while she performed some tasks well, she was lacking in others."  App'x 88.  He further explained that the deadlines on which Ms. Lewis awarded task orders were not fully satisfied.  S.A. 18–19.  Similarly, Ms. Henby testified that "Lewis did well in some aspects of her job, but had difficulties with other aspects.  For example, Lewis was quick to point out variances in the accounting for the group. . . .  She believed that Lewis struggled in getting past the variances and was unable to find viable solutions to the problems."  App'x 82.  Ultimately, Ms. Henby concluded that while Ms. Lewis was close to receiving an "exceeds," she needed more points in her evaluation to receive the "exceeds" rating.  S.A. 46.  Ms. Gilpin agreed.  *Id.* at 50.  Moreover, Ms. Henby also noted Ms. Lewis's "met" departure rating from her prior supervisor for the work she had performed during the first part of the fiscal year in a different unit.  *Id.* at 46.  In view

of the foregoing, the Board was entitled to find the witness declarations, made under penalty of perjury, credible and persuasively establishing that Ms. Lewis would have received in 2017 a "met" rating in the absence of her protected disclosure.

Ms. Lewis challenges, without pointing to any testimony of her own, that the witnesses inconsistently portrayed the roles of Mr. McCreight and Ms. Gilpin.[5] The Board, finding no inconsistency in any witness's testimony, determined that Ms. Lewis failed to show that any witness was not credible. We see no reason to overturn the Board's credibility determinations. Ms. Lewis has not shown that either testimony was "inherently improbable or discredited by undisputed evidence or physical fact." *Hanratty v. Dep't of Transp.*, 819 F.2d 286, 288 (Fed. Cir. 1987); *see also Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986) ("[T]hese credibility determinations are virtually unreviewable."). Although every statement does not say the magic words that Mr. McCreight could not finalize the evaluation, it is clear from the statements in their entirety that Mr. McCreight was but the first step in the evaluation process. *See, e.g.*, App'x 127–28. Regarding Ms. Gilpin, it is unsurprising that when Mr. McCreight and Ms. Henby explained their own decisions about Ms. Lewis's rating that they did not discuss Ms. Gilpin's role, particularly when

---

[5] Ms. Lewis claims Ms. Gilpin's credibility is undermined by an email chain produced by the Agency. Appellant's Br. at 20–21. The time stamps of the emails show that Ms. Gilpin responded to an email from Ms. Henby regarding Ms. Lewis's resignation an hour before Ms. Henby sent her email. *Id.* But Ms. Lewis at no point gives any indication what relevant information may have been edited or omitted that may undermine Ms. Gilpin's testimony on the matters on appeal. It is thus unclear to us how the time stamp discrepancy suggests that Ms. Gilpin is not credible.

she did not participate until later in the process.  The record is thus consistent regarding each supervisor's role.

Likewise, we disagree with Ms. Lewis's assertion that the Agency witnesses provided inconsistent testimony as to her meeting all of her Commitments.  The record reflects that while Ms. Lewis met the "exceeds" standard for three of her Commitments, she did not meet that standard for the fourth Commitment because she did not always meet her deadlines.  S.A. 40–41; *see also* App'x 82.  Thus, she was awarded a "met" for that Commitment.    App'x 84.  Ms. Lewis has therefore provided no sufficient justification to overturn the Board's credibility determinations.  We thus conclude that the Board's findings are supported by substantial evidence.

### CONCLUSION

Ms. Lewis has failed to show that the Board's decision was arbitrary and capricious, contrary to the law, or lacking substantial evidence.  On the contrary, the record reflects that Ms. Lewis fell short of the "exceeds" rating and that she was denied her detail opportunity because of the limited resources of Web Apps.  The Board determined that this record did not show any retaliation from the Agency for Ms. Lewis's protected disclosures by clear and convincing evidence.  We agree.  We have considered Ms. Lewis's remaining arguments and find them unpersuasive.[6]  Accordingly, we affirm the Board's determination.

**AFFIRMED**

No Costs.

---

[6] Ms. Lewis included a request in her reply brief to have oral argument.  Appellant's Reply Br. at 11.  After consideration, we deny this request.