NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**COLIN S. WATANABE,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2023-1752

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-21-0264-I-1.

---

Decided:  October 4, 2023

---

COLIN S. WATANABE, Honolulu, HI, pro se.

IOANA C. MEYER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY.

---

Before LOURIE, PROST, and CHEN, *Circuit Judges.*

PER CURIAM.

Former Department of the Army ("the Army") employee Colin Watanabe appeals a decision of the Merit Systems Protection Board ("the Board") sustaining his removal for conduct unbecoming a supervisor. *Watanabe v. Dep't of the Army*, No. SF-0752-21-0264-I-1, 2021 WL 5994229 (M.S.P.B. Dec. 17, 2021) ("*Decision*"), Pet. Br. 4–28. For the following reasons, we *affirm*.

## BACKGROUND

Watanabe was employed by the Army as a Supervisory General Engineer, GS-0801-14, at Schofield Barracks, Honolulu, Hawaii. *Id.* at 6. In August 2020, the Army began investigating allegations that he had improperly used his position of authority to encourage hiring specific applicants and that he had improperly used government property for personal storage. *Id.* at 8. In February 2021, the Army removed Watanabe for conduct unbecoming a supervisor based on charges of unfair personnel practices and misuse of government property. *Id.* at 6–7. Watanabe appealed his removal to the Board and requested a hearing. *Id.* The case was assigned to an administrative judge ("an AJ") of the Board. *Id.* at 6.

One of the charges reviewed by the AJ involved Watanabe and his subordinates' actions during the hiring of S.P., the son-in-law of Schofield Barracks' Deputy Director. *Id.* at 8–11. The Army investigator interviewed Cadina, a member of the S.P. hiring panel. *Id.* at 9–10. Cadina's direct supervisor was Akeo, and Akeo's direct supervisor was Watanabe. *Id.* at 9. Cadina initially told the investigator that Akeo did not pressure the panel to select S.P. *Id.* at 10. Cadina later went back and told the investigator that "Akeo had told him to hire S.P. to please the boss," and absent that pressure, S.P. would not have been hired. *Id.*

At the hearing, Cadina admitted to initially lying to the investigator about S.P.'s hiring. *Id.* He explained that Akeo was outside the room during his initial interview with the investigator and that he was afraid Akeo would retaliate against him if he told the truth. *Id.* Cadina testified that, after the interview, Watanabe waved Cadina into his office and repeatedly thanked him for "what you're doing for [Akeo]," which Cadina understood as Watanabe thanking him for lying to the investigator. *Id.* Cadina memorialized this conversation with Watanabe and provided it to the investigator. *Id.*

Watanabe testified to the event differently. *Id.* at 11. In his retelling, he explained that he called Cadina into his office because he was concerned that Cadina seemed like he was in a "fragile state." *Id.* Watanabe testified that Cadina told him that "'[Akeo] owes me big time,' and that he was going to call the investigator and 'tell the truth.'" *Id.* Watanabe testified that he responded by thanking Cadina for telling the truth. *Id.* The AJ evaluated both parties' testimony and found Cadina to be more credible despite initially lying to the investigator. *Id.*

The AJ reviewed an additional charge of improper hiring practices and a charge of misuse of government property. *Id.* at 8–9, 12–15. For the improper hiring practices charge, two witnesses testified that Watanabe pressured one of them to promote a subordinate. *Id.* at 8–9. And for the misuse of government property charge, witnesses testified that Watanabe requested key access to various locations, had a freezer turned on in an unused facility, was storing large quantities of personal food in these locations, and abandoned his car on the property. *Id.* at 12–14. The investigator inspected each location and found the personal items stored there. *Id.* at 13. The AJ found the testimony of each witness more credible than Watanabe's and held that the Army proved all three charges by preponderant evidence. *Id.* at 11, 15. The AJ thus issued an Initial Decision affirming Watanabe's removal by the Army.

Watanabe filed a petition for review of the Initial Decision by the full Board, which was denied on February 9, 2023. The AJ's Initial Decision accordingly became the Final Decision of the Board. 5 C.F.R. § 1201.113(b). Watanabe timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

A Board decision may only be set aside if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). The petitioner "bears the burden of establishing error in the Board's decision." *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

Watanabe makes two arguments on appeal: (1) that the AJ applied the wrong law when it assessed witness credibility; and (2) that the AJ incorrectly found a witness's testimony more credible than his own because the AJ "ignored the fact that the Agency witness admitted to lying in an official investigation." Pet. Br. at 2. To support his arguments, Watanabe cites the portions of the decision and his petition for review discussing the witness Cadina. *Id.* (citing Pet. Br. at 10, 44).

We first address the argument that the AJ applied the wrong law when assessing witness credibility. When making credibility determinations an AJ should consider:

(1) [t]he witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of

the witness's version of events; and (7) the witness's demeanor.

*Hillen v. Dep't of the Army*, 35 M.S.P.R. 453, 458 (M.S.P.B. 1987). The AJ did exactly that when it found Cadina's testimony more credible than Watanabe's.

The AJ considered that "both men had the same opportunity and capacity to observe their conversation" but found that Cadina's version of events was more plausible considering his concern over lying to the investigator. Pet. Br. at 11. The AJ further found that "Cadina's testimony was also consistent with the earlier memorandum he provided [to the investigator]" and that "his demeanor was candid and forthright" regarding the pressure he felt from Akeo and Watanabe to "cover-up" for Akeo. *Id.* And finally, the AJ found that "Cadina was an unbiased witness, as he had nothing to gain by admitting to an investigator, and to the Board, that he had lied to an investigator." *Id.* (citing *Hillen*, 35 M.S.P.R. at 458). Comparatively, the AJ found that Watanabe's testimony was "biased, self-serving, and implausible." *Id.* The AJ therefore applied the correct law by considering the *Hillen* factors when evaluating the credibility of Cadina's and Watanabe's testimony.

We next address the argument that the AJ incorrectly found Cadina's testimony more credible than Watanabe's. "To the extent that the petitioner's claim is based upon a challenge to the presiding official's credibility determinations, we reiterate our previous holdings that these determinations are virtually unreviewable." *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986) (collecting cases). Having found that the AJ applied the correct legal standard, Watanabe failed to establish any error with the decision; we therefore find nothing to justify rejecting the AJ's determinations as to witness credibility. We therefore affirm the Board's decision.

CONCLUSION

We have considered Watanabe's remaining arguments and find them unpersuasive.  For the foregoing reasons, we *affirm*.

**AFFIRMED**

COSTS

No costs.