HUGHES, Circuit Judge,
dissenting.
In a whistleblower case where an employee makes a prima facie case of whistle-blower reprisal, the burden shifts to the agency to prove by clear and convincing evidence that it took the adverse action for a reason other than whistleblower reprisal. Whether the agency had a non-retaliatory reason is a factual determination, which we review for substantial evidence. Here, the Board made that factual determination relying largely on the unrebutted, credible testimony of Warden Upton, the agency official responsible for taking the adverse action. As Warden Upton testified, and the Board found, Mr. Miller was reassigned to other job duties at OIG’s request so as not to interfere with an official investigation.
The majority nowhere suggests that this reason, if true, would have been insufficient to satisfy the agency’s burden. Nor does the majority anywhere directly question Warden Upton’s credibility, or his testimony that Mr. Miller’s interference with the investigation was-the actual reason for the reassignment. Thus, the majority’s reasoning would seem to lead to the following conclusions: first, the deciding official credibly testified that the reason he took the adverse action was at OIG’s request; second, the majority has no reason to question this testimony or overturn the Board’s implicit credibility determination that the official testified truthfully; and third, the reason given—Mr. Miller’s interference with the investigation—would have met the clear and convincing evidence standard if true. These three conclusions, which can all be gleaned from the majority’s opinion, require us to affirm.
Instead the majority.concludes, on some undefined notion of substantial evidence, that there should be “more” here. Specifically, the majority states that the lack of “any other testimony or documentary evidence—for example, from OIG” presents a “significant weakness” in the Government’s case, Maj. Op. at 1261, and that the “Government must do more- than it did here to satisfy the ‘high burden of-proof ” that is required in whistleblower reprisal cases, id. at 1263. But substantial evidence requires only “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,” Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938), and the Board’s factual conclusions, each of which is supported by substantial evidence, would be sufficient for a reasonable person to conclude that Mr. Miller was reassigned for reasons independent of whistleblower reprisal.
Thus, there are only three possible explanations for the majority’s conclusion, all of which conflict with this Court’s precedent.
The first and most likely explanation is that the majority simply disregards our *1266 deferential standard'of review. The majority reaches beyond our deference standard to re-weigh the evidence and conclude that “given the other evidence of record, the Government’s sole rebanee on [Warden Upton’s] conclusory and unsupported testimony was not enough to satisfy the Government’s burden.” Maj. Op. at 1263-64 n.5. The majority appears to base its heightened review standard on the argument that we must take the underlying burden of proof—clear and convincing evidence—into consideration in our review on appeal, id. at 1257-58, and goes so far as to say that our “focus” is “on whether [the agency’s evidence purporting to show independent causation] is strong,” id. at 1259.1 do not dispute that we must take into account the Government’s burden to show independent causation by clear and convincing evidence. However, this does not transform our assessment into a de novo review, and our precedent does not dictate that this Court’s standard of review is to assess the strength of the agency’s evidence de novo. See Carr v. Soc. Sec. Admin., 185 F.3d 1318, 1323-24 (Fed. Cir. 1999) (noting that the Board, not this Court, considers the strength of the agency’s evidence in support of its personnel action). Rather, established precedent dictates that we are only tasked with evaluating whether a reasonable fact finder could have arrived at the Board’s determination that Mr. Miller was reassigned for reasons independent of his protected disclosures. See In re Gartside, 203 F.3d 1305, 1312 (Fed. Cir. 2000) (the substantial evidence standard “asks whether a reasonable fact finder could have arrived at the agency’s decision”).
Ample evidence exists to support the Board’s factual finding that the agency demonstrated, by clear and convincing evidence, that the reason for Mr.’ Miller’s reassignment was to prevent him from interfering with an OIG investigation. First, of course, is the consistent and credible testimony of Warden Upton, the deciding official who took the action. See, e.g., J.A. 542-45 (Warden Upton testifying that OIG asked him to reassign Mr. Miller because of the investigation). Second is Mr. Miller’s own testimony about the reason for the reassignment. Id. at 273 (Mr. Miller testifying that Warden Upton told him to leave the factory on December 15, 2009, due to the OIG investigation); id. at 283 (Mr. Miller testifying that Warden Upton told him he was being reassigned on December 16, 2009, because Miller had purportedly sent an email to the staff urging them not to cooperate with the OIG investigation). And, third is the fact that Mr. Miller had to be reassigned to other positions within the Bureau of Prisons because he did, in fact, continue to attempt to interfere with the investigation. Id. at 546-50 (Warden Upton testifying that Mr. Miller was removed from subsequent positions because he had conversations with inmates and monitored calls to gain information about the investigation). Although a different fact-finder might not have believed Warden Upton or the agency’s account, we are not permitted to re-weigh or recharacterize the evidence as the majority does. See Maj. Op. at 1260 (concluding that there is no evidence that Mr. Miller could either compromise or be a target of an investigation that his protected disclosure related to).
Second, even as the majority denies that it is questioning Warden Upton’s credibility, it essentially determines that his testimony is insufficient and the reasons he gave for the reassignment are not the truth. That, of course, we cannot do. See Hambsch v. Dep’t of the Treasury, 796 F.2d 430, 436 (Fed. Cir. 1986) (credibility determinations are “virtually unreviewable”). There is no evidence to suggest that Warden Upton lied about his rationale for reassigning Mr. Miller. Warden Upton *1267 consistently testified that he reassigned Mr. Miller due to the pending OIG investigation and at OIG’s request. The Board was never presented with contrary testimony. The majority faults Warden Upton’s testimony for his failure to “testify as to significant details, such as who at OIG he communicated with.” Maj. Op. at 1260. B.ut the majority fails to consider that Warden Upton testified- about Mr. Miller’s reassignment more than four years after the reassignment took place. And, in any event, the fact that Warden Upton could not remember those details goes to the credibility of his testimony, which is a question for the Board and not for us. The majority also neglects to take into account that Mr. Miller himself testified that Warden Upton explained to him on multiple occasions that he was being reassigned because of the OIG investigation. See, e.g., J.A. 273, 283. The majority has to find a lack of substantial evidence to support the Board’s factual finding, and cannot premise its decision on its own belief that something more happened here. See Kewley v. Dept of Health & Human Servs., 153 F.3d 1357, 1364 (Fed. Cir. 1998) (affirming the finding of independent causation by looking only to the evidence “expressly relied upon by the AJ [Administrative Judge]”).[1]
The third, and perhaps the most damaging explanation for the majority’s opinion, is that it has sub silentio imposed a corroboration requirement for a deciding ofifi-cial’s testimony. Even though the majority denies that it is doing so or even that it is questioning Warden Upton’s credibility, I can think of no other explanation for its criticisms that' Warden Upton’s testimony was the “only evidence supporting the seemingly unusual basis for Mr. Miller’s four-and-a-half-year reassignment,”[2] and “[t]he Government failed to present any other witness testimony to support its argument that Mr. Miller was removed out of concern that he might somehow interfere with the OIG investigation.” Maj. Op. at 1260. The majority also suggests that there would have been documentation of repeated reassignments. Id. at 1260-61. The majority’s “common sense” speculation is unfounded and inconsistent with federal personnel law. Official personnel documents are generated for changes in grade,- pay, official duty station and the like, not temporary reassignments. Contrary to the majority’s assertion, I would not expect any kind of official documentation to exist for Mr. Miller’s reassignments which did not involve a change in position, pay or official duty station. See United States Office of Personnel Mgmt., Guide to Processing Personnel Actions (2016), https://www.opm.gov/policy-data-oversight/ data-analysis-documentation/personnel-documentation/#url=Processing-Personnel-Actions.
The majority’s use of a corroboration requirement is the only explanation that *1268 would suffice for it to hold that a deciding official’s credible testimony is insubstantial or false. There is no one with better firsthand knowledge to testify about the reasons for a personnel action than the person responsible for taking it. Warden Upton was indisputably Mr. Miller’s direct supervisor and had the authority to reassign him. While an agency official could certainly lie about his or her decision to reassign an employee, that is largely a credibility determination for the Board to make. And, the majority appears to concede that Warden Upton, the agency official in this case, provided credible testimony. See Maj. Op. at 1261. .
The majority’s erroneous findings are further highlighted through its conclusion that Warden Upton’s “bare testimony about what OIG directed him to do affords only minimal support for Mr. Miller’s removal” in light of other evidence. Id. This other evidence includes the Board’s “unchallenged findings” that Mr. Miller made protected disclosures that contributed to his removal, and Mr. Miller’s record as an “outstanding employee.” Maj. Op. at 1261. As a preliminary matter, while the Board did find that Mr. Miller made a prima facie case that he made a protected disclosure that was a contributing factor in the reassignment, J.A. 132-35, the burden then shifted to the agency to demonstrate by clear and convincing evidence that it would have made the reassignment in the absence of the disclosures. J.A. 135. That is the sole issue on appeal here, and the Carr factors—which the majority concedes govern here—do not consider the employee’s success in making a prima facie case of whistleblower reprisal. Indeed, it is the employee’s success in doing so that mandates the consideration of the Carr factors in the separate inquiry into the agency’s reasons for the reassignment. Furthermore, the majority mischaracterizes both the Board’s finding and the Government’s position as conceding that Mr. Miller’s disclosures contributed to his reassignment. Maj. Op. at 1263 (“But the dissent wholly ignores what the Board already found and the Government does not dispute on appeal: Mr. Miller ‘made protected disclosures under 5 U.S.C. § 2302(b)(8) that were a contributing factor in the decision to reassign him.’ ” (quoting Miller v. Dep’t of Justice, No. DA-1221-11-0401-W-3, 2015 WL 1548991 (M.S.P.B. Apr. 8, 2015))). In fact, the opposite is th'é case. The Government asserted and the Board clearly found that Mr. Miller’s disclosures did not contribute to his reassignments, which is why his whistleblower claims were rejected. See J.A. 146 (“[T]he record demonstrates that the' appellant’s initial and successive reassignments were precipitated by an external OIG' investigation.”); Resp. Br. at 10-12.
The majority also apparently believes that OIG is so closely tied to the agency that an OIG representative should have testified as to Mr. Miller’s removal, and that the Board should have assessed whether OIG had a possible retaliatory motive.[3] That suggestion evidences a mis *1269 understanding of the role of the Inspectors General in our federal government. The OIGs are, by congressional design, objective units independent from the respective agencies. Their purpose is, among other things, to detect fraud and abuse. See Inspector General Act of 1978, Pub. L. 95-452, § 2, 92 Stat. 1101 (1978). And, in doing so, they often rely on reports from whistleblowers. See 5 U.S.C. § 2302(b)(8)(B) (protecting whistleblower disclosures to the Inspectors General). To suggest that the OIG would retaliate against a whistleblower flies in the face of its congressionally mandated mission. But this discussion is beside the point because there is no evidence that OIG had a retaliatory motive. It is purely speculative and has no place in a substantial evidence review.[4]
In any event, there is no dispute that Warden Upton was Mr. Miller’s direct supervisor and had the sole authority to reassign him. Therefore, the majority errs in faulting the Government for failing to provide testimony from OIG.
Finally, the majority fails to appreciate the impact of its decision on the agency. The majority’s reversal of the Board’s decision likely means that Mr. Miller will succeed in his claim of whistleblower reprisal since the Court has now ruled that the agency failed to rebut his prima facie case. Under the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 (the No FEAR Act), the agency likely will be required to report this ease to Congress. See Pub. L. 107-174, § 203, 116 Stat. 569 (2002). The majority’s decision will require this report even though the majority cannot cite to a single piece of affirmative evidence that Mr. Miller was reassigned for whistleblowing. In addition, Warden Upton will be associated with taking a personnel action that the majority now labels as whistleblower retaliation, even though the Board found his testimony credible and there is nothing in the record to indicate that he either lied or reassigned Mr. Miller for whistleblowing activity. Thus, the majority’s opinion not only does damage to the law, but also harms, without any evidence of wrongdoing, a government supervisor with over 20 years of federal service.
At the end of the day, after denying that it is making a dé novo credibility determination or imposing a corroboration requirement for the deciding official’s testimony, the majority’s basis for reversing the Board’s decision seems to be that something “more” was required. But our statutorily limited scope of review over Board decisions conflicts with the majority’s requirement for “more.” See 5 U.S.C. § 7703(c)(3) (as applicable here, we may only “hold unlawful and set aside any agency action, findings, or conclusions found to be ... unsupported by substantial evidence”). I don’t dispute that additional evidence, such as more detailed testimony from Warden Upton about OIG’s request to reassign Mr. Miller—for example, the requesting investigator’s name, or an affidavit from OIG averring to the requested *1270 reassignment—would certainly have bolstered the agency’s case. But these considerations are only relevant to either credibility or corroboration, the first of which we do not review, and the second of which the majority disclaims.
“Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established.” Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006). A reviewing court must consider the record as a whole, including that which “fairly detracts from its weight.” Id Having pointed to no evidence that detracts from Warden Upton’s testimony and, indeed, disclaiming any attack on his credibility, the majority nevertheless concludes that his testimony is insufficient for a reasonable mind to accept. Or put simply, the deciding official’s credible and uncontra-dicted testimony about the non-retaliatory reason he took the disputed action is insufficient to establish that the action was non-retaliatory. I have never heard of such an application of the substantial evidence standard that rejects uncontradicted, truthful testimony in favor of unfounded speculation about what might have happened or what more the agency should have done.
Under the proper application of the substantial evidence review standard, I would affirm the Board’s decision. From the majority’s contrary conclusion, I respectfully dissent.

. At times, the majority appears to suggest that, even if Warden Uptpn was telling the truth, the agency also was required to demonstrate that OIG had a clear and convincing non-retaliatory reason for requesting the reassignment. See Maj. Op. at 1262. ("We also find it concerning that the A.J. made a finding regarding Warden Upton’s retaliatory motive, but none regarding OIG's motive.”). But that type of "Cat’s Paw" theory, see, e.g., Howard v. Dep't of Transp., 511 Fed.Appx. 984, 987 (Fed. Cir. 2013) (rejecting petitioner’s theory that an individual with knowledge of a protected disclosure exerted -'influence on the .managerial official who terminated the petitioner’s employment), was not presented to the Board or to this Court.

. And I fail to see what is "unusual” about a reassignment decision made to cooperate with an OIG investigation. Surely, the majority is not suggesting that agencies refuse to cooperate with the Inspector General. And if “unusual” refers to the length, I see nothing in the record to suggest that 4.5 years is an "unusual” length of time for an OIG investigation.

. The concurrence goes further and suggests that the case should, in fact, be remanded for the agency to affirmatively demonstrate a lack of any retaliation by OIG. See Concurring Op. at 1264-65. But, as noted above, that theory of whistleblower retaliation was never presented to the Board or even suggested to this court—it was only suggested by members of the majority. An agency should not be required, under Carr factor two, to disprove theories of retaliation that were never presented to the Board and not part of the prima facie case. The burden does not shift to the agency until a prima facie case has been made which makes sense. A prima facie case is made by showing a protected disclosure, a prohibited personnel action, and knowledge of the disclosure within temporal proximity by the official taking the personnel action. See,.e,g., Whitmore v. Dep’t of Labor, 680 F.3d *1269 1353, 1367 (Fed, Cir, 2012). Our precedent does not require an agency to go further and disprove other possible retaliatory actions when no prima facie case has been made. And if it does, it ought to be corrected.

. It is, however, potentially dangerous dicta, to the extent it suggests, that OIG might have some affirmative duty to explain its reasoning for a reassignment during an investigation or provide evidence of why it is necessary for these reassignments to take place. The circumstances of their various investigations can and do involve extremely sensitive and/or potentially criminal actions, A requirement that OIG disclose anything to the agency it is investigating has the potential to damage an ongoing investigation.