NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARK GRISSOM,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2021-2124

---

Petition for review of the Merit Systems Protection Board in No. AT-0714-21-0175-I-1.

---

Decided:  November 30, 2022

---

MARK D. GRISSOM, Maylene, AL, pro se.

MATNEY ELIZABETH ROLFE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent Department of Veterans Affairs.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

---

Before STOLL, BRYSON, and CUNNINGHAM, *Circuit Judges*.

PER CURIAM.

Mr. Mark D. Grissom worked at the Veterans Affairs (VA) Medical Center in Tuscaloosa, Alabama, as an Administrative Officer before the Department of Veterans Affairs removed him under 38 U.S.C. § 714. Mr. Grissom appealed that decision to the Merit Systems Protection Board, disputing the charges and asserting that the VA's removal was retaliatory. The Board affirmed the VA's decision. Because the Board's decision as to the reasonableness of removal as a penalty is legally erroneous in view of *Connor v. Department of Veterans Affairs*, 8 F.4th 1319 (Fed. Cir. 2021), we vacate that portion of the Board's decision and remand. We affirm, however, the Board's determination that Mr. Grissom failed to prove his affirmative defenses.

## BACKGROUND

Mr. Grissom held numerous positions at the VA Medical Center before becoming an Administrative Officer. He had a clean disciplinary record with mostly successful performance reviews. Throughout his time at the VA, Mr. Grissom raised numerous concerns with the VA officials regarding certain alleged activity at the VA Medical Center, such as a supervisor not being on-site, doctors threatening staff, retaliatory actions against him, and other prohibited personnel practices.

The VA issued its first proposed removal letter to Mr. Grissom on August 28, 2020, for failure to follow instructions, conduct unbecoming of a federal employee, inappropriate use of computer and email, and lack of candor. On October 6, 2020, the VA rescinded its first proposed removal letter and issued a second proposed removal letter, charging Mr. Grissom with failure to follow instructions. The notice provided five specifications to support the charge, each specification based on separate instances in which Mr. Grissom failed to complete work as directed by his supervisor. In response, Mr. Grissom asserted that his supervisor, Dr. Nathan Whitaker, and other officials

engaged in ethical violations, retaliatory conduct, and corruption. He also demanded the immediate removal of these individuals and alleged that he had information sufficient to bring a RICO case against VA employees. The VA's deciding official in this case, Mr. John Merkle, determined that "the charge and its specifications . . . are supported by substantial evidence," and the VA removed Mr. Grissom from his position. Appx.[1] 28.

Mr. Grissom appealed to the Board, disputing the charge and arguing that the VA was retaliating against him for his protected whistleblowing disclosures. The Administrative Judge (AJ) determined that Mr. Grissom made fifteen protected whistleblowing disclosures over the relevant time frame. The AJ further concluded that, because Mr. Merkle had notice of Mr. Grissom's disclosures before the issuance of the first proposed removal letter, a reasonable person could conclude that Mr. Grissom's disclosures contributed to the decision to remove Mr. Grissom. Nevertheless, the AJ affirmed the VA's decision, concluding that the VA had shown by clear and convincing evidence that it would have removed Mr. Grissom regardless of his whistleblowing.

In determining whether the VA would have taken the same personnel action in the absence of whistleblowing, the AJ considered the factors set forth in *Carr v. Social Security Administration*, 185 F.3d 1318 (Fed. Cir. 1999): "(1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not

---

[1]    Citations to "Appx." refer to the Appendix attached to the appellee's brief.

whistleblowers but who are otherwise similarly situated." Appx. 77 (citing *Carr*, 185 F.3d at 1323).

The AJ found that the first factor weighed heavily in the VA's favor because the strength of the evidence that Mr. Grissom "failed to follow instructions is overwhelming." *Id.* The AJ noted that Mr. Grissom did not dispute that he failed to perform the assigned tasks and gave what the AJ found were "less than credible" reasons for not performing the tasks. *Id.* Next, the AJ found that the second factor favored the VA because there was little to no motivation to retaliate, because VA officials at the Tuscaloosa VA were "numb" to Mr. Grissom's numerous allegations, no individual VA official was directly implicated in multiple of these allegations, and there was no indication Mr. Merkle was angered by or fearful of Mr. Grissom's whistleblowing. Appx. 78. The AJ similarly found the third factor favored the VA because the VA's action was not inconsistent with disciplinary actions taken against employees who failed to follow instructions and were not whistleblowers. Relevant to this factor, the AJ relied on Mr. Merkle's undisputed testimony that he had been the deciding official in 15 to 20 disciplinary actions, seven of which were removals, only one of the removals involved a whistleblower; further, of the six non-whistleblower removals, three removals involved charges of failure to follow instructions. Viewing the record as a whole, the AJ found that the VA had met its burden and sustained the removal charge.

The AJ also considered Mr. Grissom's defense that he was removed in retaliation for filing a civil RICO lawsuit. The AJ first found that a RICO lawsuit is protected activity under 5 U.S.C. § 2302(b)(9)(A)(ii), as opposed to protected under whistleblower law. The AJ then determined that under *Warren v. Department of the Army*, 804 F.2d 654 (Fed. Cir. 1986), Mr. Grissom had not demonstrated that "there was a genuine nexus between the retaliation and the adverse employment action." Appx. 81–83. The AJ found that the first three elements were met. However, the AJ

found that Mr. Grissom "failed to show a genuine nexus between his removal and his civil RICO lawsuit" because the deciding official "credibly testified" that he never saw the first letter or considered it and that he "was one of many agency officials named, and there was no evidence that Mr. Merkle was personally impacted by it or fearful of it in any way." Appx. 83–84. The AJ sustained the charge.

The AJ went on to analyze the reasonableness of the penalty in light of certain factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981): (1) the nature and seriousness of the offense, (2) the employee's past disciplinary record, (3) the supervisor's confidence in the employee's ability to perform his assigned duties, (4) the consistency of the penalty with the agency's table of penalties, and (5) the consistency of the penalty with those imposed on other employees for the same or similar offenses. Appx. 85 (citing *Douglas*, 5 M.S.P.R. at 306, and *Lewis v. Dep't of Veterans Affs.*, 113 M.S.P.R. 657, ¶ 5 (2010)).

With respect to the first and third factors, the AJ considered the testimony of Mr. Merkle and Mr. Grissom's supervisor that Mr. Grissom's actions hindered the VA's ability to provide safe and efficient care to veterans. The AJ also noted that Mr. Merkle considered a lesser penalty than removal but decided against it given the nature of the misconduct and Mr. Grissom's repeated failures to follow instructions. For the second factor, the AJ determined that Mr. Grissom's "failure . . . to take any responsibility for his misconduct" outweighed his mostly clean service record. *Id.* For the fourth and fifth factors, the AJ determined that removal for failure to follow instructions was appropriate in light of the agency's decisions in similar cases. The AJ thus affirmed the VA's action.

The AJ's decision became the final decision of the Board, *see* 5 C.F.R. § 1201.113, and Mr. Grissom timely

sought review in this court, *see* 5 U.S.C. § 7703.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We review the Board's legal conclusions de novo and its fact findings for substantial evidence.  *See Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1364 (Fed. Cir. 2019).  "To determine whether substantial evidence supports the Board, we must determine whether 'considering the record as a whole, the agency's evidence is sufficient to be found by a reasonable factfinder to meet the [agency's] evidentiary burden.'"  *Id.* at 1367 (quoting *Leatherbury v. Dep't of the Army*, 524 F.3d 1293, 1300 (Fed. Cir. 2008)).  An MSPB decision must be affirmed unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence."  5 U.S.C. § 7703(c).

On appeal, Mr. Grissom argues that:  (1) the Board did not appropriately assess the *Carr* factors; (2) the Board erred in finding that his filing of a RICO lawsuit was not a protected activity that would preclude his removal; (3) the Board erred in sustaining the VA's charge of failure to follow instructions; (4) the Board erred in determining the VA acted reasonably in removing him; and (5) the AJ allowed perjury and witness tampering.  We address each argument in turn.

## I

We first address Mr. Grissom's argument that the Board erred in sustaining the VA's charge of failure to follow instructions.  We review the Board's decision to sustain such charges for substantial evidence.  *See Long v. Soc. Sec. Admin.*, 635 F.3d 526, 530 (Fed. Cir. 2011).  To prove a charge of failure to follow an instruction, "an agency must establish that the employee (1) was given proper instructions, and (2) failed to follow the instructions."  *Boyd*

*v. Dep't of Veterans Affs.*, 740 F. App'x 710, 713 (Fed. Cir. 2018) (citing *Hamilton v. U.S. Postal Serv.*, 71 M.S.P.R. 547, 555–56 (1996)). "Proof of a failure to follow instructions charge requires the agency to show that an employee failed to follow a proper instruction . . . ." *Smith*, 930 F.3d at 1368 (citing *Hamilton*, 71 M.S.P.R. at 556).

The VA supported its October 6, 2020, charge of failure to follow instructions with five specifications that describe Mr. Grissom's failure to provide information or complete work as directed by his supervisor. We address the AJ's analysis of each specification in turn.

## A

The first specification alleges that on April 2, 2020, Dr. Whitaker instructed Mr. Grissom to collect information relating to the previous Chief of Staff—including which meetings to attend, what services fell under Specialty Care, who was in charge of each specific service, what each service is currently able to deliver, what was the current level of staffing for each area, and what preparations were in place in the event of an influx of patients—but Mr. Grissom failed to follow this instruction. Appx. 14.

Because it was undisputed that Mr. Grissom did not complete Dr. Whitaker's instruction, the AJ considered the propriety of the instruction. The AJ relied on Dr. Whitaker's testimony that because Dr. Whitaker was newly appointed, the requested information was important and urgent. Appx. 49. Dr. Whitaker and Mr. Merkle both testified that the information should have been readily available to any administrative officer. *Id.* The AJ noted that Mr. Grissom did not dispute that he failed to provide the requested information. Instead, Mr. Grissom offered that he was not privy to the prior Chief's schedule; that he believed that Dr. Whitaker should have asked his supervisor for the information; that an official organization chart had not been approved for years; that the prior Chief told him not to do any activities related to human resources; that

the turnaround time for the request was unreasonable; and that Dr. Whitaker's supervisor would not release the information. Appx. 50. The AJ found Mr. Grissom's testimony less than credible because it was confusing and because he had previously made inconsistent statements. Appx. 50–51.

Although Mr. Grissom offered testimony as to why the instruction might not have been proper, the AJ found that testimony not credible. Absent exceptional circumstances, we do not review the AJ's findings regarding credibility. *Chambers v. Dep't of Interior*, 515 F.3d 1362, 1370 (Fed. Cir. 2008) (holding the Board's "credibility determinations are 'virtually unreviewable' at this level") (quoting *Hambsch v. Dep't of Treasury,* 796 F.2d 430, 436 (Fed. Cir. 1986)). In this case, the AJ determined that Mr. Grissom's testimony was less than credible. In view of the AJ's credibility determination and Mr. Grissom's admission that he did not follow these instructions, we determine that substantial evidence supports the AJ's finding that Mr. Grissom failed to follow a supervisor's instruction for this first specification.

B

The second specification alleges that on April 3, 2020, Dr. Whitaker instructed Mr. Grissom to "clear outstanding consults for Specialty Care by close of business (COB) on April 3, 2020, or words to th[at] effect. However, all the consults were not cleared." Appx. 14.

In determining that the VA has proven Mr. Grissom was given a proper instruction and failed to carry out that instruction, the AJ relied on Dr. Whitaker's testimony that: he forwarded the instruction to Mr. Grissom; Mr. Grissom should have been able to accomplish the task in time; and there were over thirty outstanding consults remaining on the Monday after the deadline. Appx. 51–52. The AJ also relied on Mr. Merkle's testimony that all of the administrative officers were asked to complete medical

consults and that the task was necessary to medical providers. Appx. 52. In addition to noting testimony that the task was administrative, the AJ noted that Mr. Grissom had been in the administrative officer position for approximately three years and, by Mr. Grissom's description, the task of clearing consults was administrative. Appx. 52–53. The AJ considered Mr. Grissom's explanation—that clearing outstanding consults required medical determinations that he was not qualified to give—but did not find Mr. Grissom's testimony as credible as the testimony of Dr. Whitaker and Mr. Merkle. The AJ also considered evidence that there appeared to be no formal training or licensure required to clear the consults. *Id.*

Again here, we do not disturb the AJ's findings regarding the credibility of the witness' testimonies. *Chambers*, 515 F.3d at 1370. In view of the evidence of record, we conclude that substantial evidence supports the Board's finding that Mr. Grissom failed to follow instructions for this second specification.

C

The third specification alleges that on April 21, 2020, Dr. Whitaker instructed Mr. Grissom to provide a weekly report of accomplished tasks while teleworking by 2:00 pm every Friday but Mr. Grissom failed to follow this instruction eleven times. Appx. 14.

The AJ noted that Mr. Grissom did not dispute this specification at the hearing. Appx. 53. Additionally, the AJ considered Dr. Whitaker's email containing the instructions to provide a weekly report, as well as his testimony that although Mr. Grissom sometimes submitted reports, he did not provide them for the eleven dates charged in the specification. Appx. 53–54. The AJ noted that Mr. Grissom provided an email dated April 28, 2020, requesting that Dr. Whitaker approve remote access, but explained that the existence of the email revealed that Mr. Grissom had access to his email account and did nothing to explain

why he was unable to provide reports in subsequent weeks. *Id.*

In view of Dr. Whitaker's testimony and the evidence of record, we conclude that substantial evidence supports the Board's finding that Mr. Grissom failed to follow instructions by not submitting weekly teleworking reports on the eleven occasions charged in the third specification.

D

The fourth specification alleges that on April 29, 2020, Dr. Whitaker instructed Mr. Grissom to: (1) order dental chairs by April 30, 2020, (2) order dental x-rays by May 7, 2020, and (3) order a nail debriding drill by May 12, 2020; but Mr. Grissom failed to do so. Appx. 15.

In considering the propriety of the instruction, the AJ relied on Dr. Whitaker's and Mr. Merkle's testimony that administrative officers oversee and manage equipment acquisition for each clinic and Dr. Whitaker's testimony that the purchase of the dental chairs had already been approved. Appx. 54. The AJ also considered an email exchange between Dr. Whitaker and Mr. Grissom in which Mr. Grissom stated he would order the dental chairs that day and then turn to procuring the "dental radiology unit." *Id.* Mr. Grissom did not dispute that he failed to carry out the instructions, but argued that the acquisitions were illegal; that he needed to perform further research and consultation before obtaining the equipment; that his necessary certification had expired and he therefore could not perform any related tasks; that Dr. Whitaker was misled and had unrealistic expectations; that Dr. Whitaker's priorities kept shifting; and that he would have been disciplined even if the task had been completed on time. Appx. 54–55. The AJ found Mr. Grissom's explanations to be illogical or unsupported. Appx. 55.

In view of Dr. Whitaker and Mr. Merkle's testimony and the evidence of record, we conclude that substantial

evidence supports the Board's finding that Mr. Grissom failed to follow instructions to procure equipment as charged in the fourth specification.

E

The fifth specification alleges that on April 30, 2020, Dr. Whitaker instructed Mr. Grissom to perform the following by May 8, 2020: (1) provide "an updated quote" for service equipment, (2) provide "an updated checklist" relating to the service equipment, and (3) enter relevant "information into [the] Strategic Equipment Planning Guide," but Mr. Grissom failed to follow these instructions. Appx. 15.

The AJ noted that Mr. Grissom did not dispute that he failed to complete the assigned tasks charged in the fifth specification. Appx. 56–57. The AJ additionally considered Dr. Whitaker's email to Mr. Grissom containing the instruction, Dr. Whitaker's testimony that equipment was necessary for patients and that administrative officers are responsible for procuring equipment, and a report from Dr. Whitaker stating that Mr. Grissom failed to perform the instruction. Appx. 56. The AJ explained that although Mr. Grissom asserted that he could not perform the tasks because he needed further consultation and offered emails in support of his assertion, some of the emails were not relevant and the others merely showed that Mr. Grissom was still working on acquiring certain equipment as late as July 30, 2020, several months after the due date. Appx. 57.

In view of the testimony and the evidence of record, we determine that the AJ's determination that Mr. Grissom failed to follow instructions as charged in the fifth specification is supported by substantial evidence.

\* \* \*

Substantial evidence therefore supports the Board's decision to sustain the VA's charge of failure to follow instructions.

## II

We next address Mr. Grissom's argument that the Board did not properly assess his whistleblower defense under the *Carr* factors. Because substantial evidence supports the Board's determination that the VA showed independent causation by clear and convincing evidence, we affirm.

An employee who believes he was subjected to illegal retaliation must prove by a preponderance of the evidence that he made a protected disclosure that contributed to the agency's action against him. *See Smith*, 930 F.3d at 1365. "If the employee establishes this prima facie case of reprisal for whistleblowing, the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure.'" *Whitmore v. Dep't of Lab.*, 680 F.3d 1353, 1364 (Fed. Cir. 2012) (quoting 5 U.S.C. § 1221(e)). The AJ determined that the prima facie case was made and that shifted the burden to the VA. Appx. 76; *see* Appx. 59, 75. Mr. Grissom argues that clear and convincing evidence did not support the AJ's determination. Appellant's Br.[2] 19.

In determining whether the VA has met its burden of showing it would have taken the same action in the absence of the whistleblowing disclosure, we have instructed the Board to consider three nonexclusive factors:

> [1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes

---

[2] "Appellant's Br. __" refers to pages in Mr. Grissom's informal opening brief as numbered by operation of an electronic file viewing system.

similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*Carr*, 185 F.3d at 1323.

Here, the first *Carr* factor—the strength of the agency's evidence in support of its action—requires an analysis of the strength of the VA's evidence purporting to show independent cause for Mr. Grissom's removal. *Miller v. Dep't of Just.*, 842 F.3d 1252, 1259 (Fed. Cir. 2016). The AJ asserted that his decision was based on the "record as a whole." Appx. 77. Specifically, the AJ pointed to undisputed evidence that Mr. Grissom resisted following instructions from his supervisor and refused to recognize his supervisor as his superior. *Id.*

Mr. Grissom asserts that the Board's finding "is without merit" because the proceeding was "rushed" and because the AJ failed to consider evidence he had not been allowed to present. Appellant's Br. 21.[3] Mr. Grissom does not, however, specify what evidence was not allowed. In fact, the AJ approved two of Mr. Grissom's witnesses (not including himself) and his "prehearing exhibits were admitted without objection." Appx. 43. Further, Mr. Grissom does not dispute that he failed to follow instructions, asserting instead that "the instructions were illegal,

---

[3]    Relatedly, Mr. Grissom "respectfully asks for oral argument to provide clarifications and new non-record evidence." Reply Br. 1. As a general matter, appellate courts review only the record that was before the court or agency from which an appeal was taken; they do not consider new evidence presented for the first time after the record is closed. *See Moore U.S.A., Inc. v. Standard Reg. Co.*, 229 F.3d 1091, 1116 (Fed. Cir. 2000). Mr. Grissom has not demonstrated why this evidence was not available when the record closed.

inappropriate, [and] were not possible due to the withholding [of] the official org[anizational] chart." Appellant's Br. 21. As explained above, the evidence of record supports the VA's position, and Mr. Grissom does not point to any contrary evidence that was not allowed by the AJ. We thus find that substantial evidence supports the AJ's finding that this *Carr* factor favors the VA. *See Smith*, 930 F.3d at 1365.

For the second *Carr* factor—the existence and strength of any motive to retaliate on the part of the VA officials involved in the decision—the AJ found that Mr. Merkle, the deciding official, had little or no motive to retaliate against Mr. Grissom. In reaching this conclusion, the AJ noted that Mr. Merkle and Dr. Whitaker were not directly implicated in reports regarding radiology staffing issues at the VA Medical Center; that the Tuscaloosa VA system was not singled out in the disclosures; that although Mr. Merkle was the Director of the Tuscaloosa VA, there was no indication that Mr. Merkle was fearful or angered by Mr. Grissom's whistleblowing; and that Mr. Grissom named so many VA officials as conspirators that they had become "numb to it." Appx. 78. The AJ also addressed the timing of Mr. Grissom's protected disclosures, noting that they "all occurred in response to Dr. Whitaker's emails documenting the appellant's failure to comply with [] instructions." *Id.* In other words, the AJ noted that the protected disclosures "appear to have been made in response to efforts to document the appellant's conduct rather than vice versa, indicating that the [agency's] documentation was not motivated by the disclosures." Appx. 79.

While the second *Carr* factor is directed towards examination of the motives of "agency officials who were involved in the decision" and not the employee, the *Carr* factors are not exhaustive and we see no error in the AJ's consideration of the timing of Mr. Grissom's disclosures. *See Carr*, 185 F.3d at 1323. Even without this evidence, however, the record contains sufficient evidence to support

the AJ's ultimate conclusion that the second *Carr* factor weighs in favor of the VA. For example, Mr. Merkle testified that he had no reason to be concerned about Mr. Grissom's whistleblowing activities, he and other officials were represented by the U.S. Attorney's Office, and Mr. Grissom's failure to follow instructions hindered Dr. Whitaker's ability to provide safe and efficient care to veterans. Appx. 83. Accordingly, the AJ's conclusion that this factor ultimately favors the VA is supported by substantial evidence.

The AJ found that the third *Carr* factor—evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated—weighed in favor of the VA. The deciding official, Mr. Merkle, testified that of the 15 to 20 disciplinary actions in which he served as the deciding official, "six removals involved non-whistleblowers and that approximately half of those involved charges of failure to follow instructions." Appx. 79. The AJ found that the only evidence provided by Mr. Grissom—testimony from a fellow employee who believed she was retaliated against for whistleblowing—was not relevant to his case, in which the evidence showed he repeatedly failed to follow instructions.

In this case, the evidence provided by the VA supported the AJ's finding that non-whistleblowing employees in comparable situations, i.e., those who were charged with failure to follow instructions, were similarly treated. Accordingly, the AJ's conclusion that the third factor favors the VA is also reasonable.

\* \* \*

Substantial evidence thus supports the Board's conclusion that the VA met its clear and convincing burden of showing it would have removed Mr. Grissom in the absence of his whistleblowing disclosures, particularly "[v]iewing the record as a whole." Appx. 79. Accordingly, we affirm the AJ's determination that the VA demonstrated by clear

and convincing evidence that it would have removed Mr. Grissom notwithstanding his whistleblowing.

## III

We turn next to Mr. Grissom's argument that the Board erred in its consideration of his RICO lawsuit defense. Specifically, Mr. Grissom argues that because he filed a RICO lawsuit against the Tuscaloosa VA, his removal was unlawful. Appellant's Br. 19.

The AJ found that filing a civil RICO lawsuit is not protected whistleblowing under the Whistleblower Protection Enhancement Act but was instead protected under 5 U.S.C. § 2302(b)(9)(A)(ii), "which prohibits retaliation for the exercise of any appeal, complaint or grievance right 'other than with regard to remedying a violation of paragraph (8).'" Appx. 80 (quoting § 2302(b)(9)(A)(ii)). The AJ then considered whether Mr. Grissom demonstrated by a preponderance of the evidence that: "(a) he engaged in protected activity; (b) the accused official knew of the protected activity; (c) the adverse employment action under review could, under the circumstances, have been retaliation; and (d) there was a genuine nexus between the retaliation and the adverse employment action." Appx. 81 (citing *Warren*, 804 F.2d at 656). The AJ found that the first three elements were met because Mr. Grissom filed a civil RICO lawsuit; Dr. Whitaker and Mr. Merkle were aware they were defendants to the lawsuit; and Mr. Grissom's removal could have been retaliation for filing the lawsuit. Appx. 81–83. Indeed, in the first removal letter, Dr. Whitaker cited to "statements made by [Mr. Grissom] concerning a *pro se* civil lawsuit filed by him against multiple agency officials alleging violations of the [RICO] Act." Appx. 47.

However, the AJ found for the VA on the fourth factor, which requires a nexus between the retaliation and the adverse employment action. Specifically, the AJ found that Mr. Grissom "failed to show a genuine nexus between his

removal and his civil RICO lawsuit." Appx. 83–84. In support of this finding, the AJ cited (1) Mr. Merkle's testimony that he neither saw the first removal letter nor considered it; (2) evidence that Mr. Merkle "was one of many agency officials named"; and (3) the lack of evidence "that Mr. Merkle was personally impacted by [the RICO lawsuit] or fearful of it in any way." Appx. 84. The AJ also considered the "severity of [Mr. Grissom]'s misconduct against the intensity of a motive to retaliate against him." Appx. 83.

We review the Board's factual findings for substantial evidence. *Smith*, 930 F.3d at 1364. Here, the AJ found that Mr. Grissom had not proved, by a preponderance of the evidence, that "there was a genuine nexus between the retaliation and the removal." *Warren*, 804 F.2d at 656; Appx. 83. That finding is supported by substantial evidence, including Mr. Merkle's testimony and the "severity of [Mr. Grissom]'s misconduct." Appx. 83–84. We thus affirm the Board's finding on this issue.

IV

We next consider the Board's decision that the VA acted reasonably in removing Mr. Grissom. In determining the reasonableness of the penalty imposed by the VA, we have held that the VA and the Board must consider whether the penalty represents a responsible balance of the relevant *Douglas* factors. *Douglas*, 5 M.S.P.R. at 305–06; *Smith*, 930 F.3d at 1369; *Connor*, 8 F.4th at 1326. Mr. Grissom argues that the VA erred by failing to consider the *Douglas* factors when selecting the penalty of removal. Reply Br. 4 (citing SAppx.[4] 1). We agree.

Mr. Merkle, the deciding officer, testified that he did not believe he considered the *Douglas* factors when reviewing Mr. Grissom's charges, despite being "familiar with the

---

[4]    Citations to "SAppx." refer to the audio files attached to the appellant's reply brief.

*Douglas* analysis," SAppx. 1 at 0:04. Although the AJ noted that our court had not yet held "that the agency (or the Board) must consider and apply *Douglas* factors to actions under section 714," Appx. 84, our later decision in *Connor* confirmed the VA's and the Board's enduring obligations to do so. 8 F.4th at 1326 (explaining that the enactment of "§ 714 did not alter preexisting law, which required the VA and the Board to apply the *Douglas* factors to the selection and review of penalties in VA disciplinary actions."). In other words, "the VA and Board must continue to apply the relevant *Douglas* factors in considering the reasonableness of the penalty." *Id.; see Bryant v. Dep't of Veterans Affs.*, 26 F.4th 1344, 1347 (Fed. Cir. 2022).

That the AJ considered the *Douglas* factors does not cure the VA's failure to do so. The AJ explained that although "not required," he found analysis of "the *Douglas* factors[] helpful here" and reviewed the reasonableness of the VA's penalty selection with respect to each of those factors. Appx. 85. We conclude, however, that consistent with our decision in *Connor*, the VA has an independent obligation to consider the *Douglas* factors. Because the VA failed to apply the *Douglas* factors in the first instance and the AJ misunderstood the VA's legal obligation to consider the *Douglas* factors, the Board's analysis was legally erroneous. We therefore vacate the penalty portion of the Board's decision pertaining to the *Douglas* factors and remand to the Board to remand to the VA for a redetermination of the penalty. *Connor*, 8 F.4th at 1326–27 (remanding to the Board to remand to the VA); *see Bryant*, 26 F.4th at 1348 (vacating Board decision's penalty portion under *Connor*).

CONCLUSION

We have considered Mr. Grissom's remaining arguments and find them unpersuasive.[5] For the foregoing reasons, we vacate the Board's decision as to Mr. Grissom's underlying removal, affirm the Board's decision as to Mr. Grissom's affirmative defense, and remand for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

COSTS

No costs.

---

[5]    We deny Mr. Grissom's Motion for Sanctions, filed on October 19, 2022.