NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LUIS RUIZ,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2025–1023

---

Petition for review of the Merit Systems Protection Board in No. DA-0752-20-0059-I-1.

---

Decided:  June 23, 2025

---

LUIS RUIZ, Brownsville, TX, pro se.

KATY M. BARTELMA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before HUGHES, CUNNINGHAM, and STARK, *Circuit Judges*.

PER CURIAM.

Luis Ruiz appeals the Merit Systems Protection Board's final order denying his petition for review and affirming the administrative judge's initial decision upholding his removal from his position as a U.S. Customs and Border Protection Officer based on charges of conduct unbecoming and lack of candor. Because the Board's decision was in accordance with the law and supported by substantial evidence, we affirm.

I

Mr. Ruiz was employed as a Customs Officer in Brownsville, Texas. In this role, he performed a range of inspection and law enforcement duties relating to the arrival and departure of persons, vehicles, and merchandise at ports of entry. On August 1, 2017, Mr. Ruiz's estranged wife, Mrs. Ruiz, obtained a temporary restraining order against Mr. Ruiz; she contacted the Brownsville Police Department several times in August to report that Mr. Ruiz had violated that order. S.A. 14–15.[1] On August 31, Mr. Ruiz and Mrs. Ruiz were involved in a domestic dispute at her home that caused Mrs. Ruiz to call 911. S.A. 15. According to the police report prepared by Officer Valerie Rivas, the officer who arrived at the scene in response to Mrs. Ruiz's call, Mrs. Ruiz reported that, when Mr. Ruiz came to her house to pick up their children for school, Mrs. Ruiz was on the phone. Mr. Ruiz returned later that morning and forced open the locked front door to confront her about who she had been speaking with. *See* S.A. 15, 55, 62. She reported that Mr. Ruiz entered her bedroom and refused to leave, punched a hole in the wall, and grabbed her phone when she tried to call 911. *See* S.A. 15, 55. She further recounted that Mr. Ruiz engaged her in a physical

---

[1]    "S.A." refers to the Supplemental Appendix attached to the Government's Informal Response Brief.

struggle, during which he hit her about six times on her face and body. S.A. 15, 55. The officer observed redness on Mrs. Ruiz's right cheek and forehead, as well as scratch marks and redness on the back of her neck and arms, consistent with this account. S.A. 16, 55. Mrs. Ruiz sprayed Mr. Ruiz using a can of oleoresin capsicum[2] that Customs had issued to Mr. Ruiz; Mr. Ruiz wiped the residue off his face and rubbed it on her. S.A. 16, 55.

In conjunction with her police report, S.A. 57–59, Mrs. Ruiz completed an application for a Magistrate's Order of Emergency Protection, stating she was willing to file criminal charges against Mr. Ruiz, S.A. 16. Mrs. Ruiz provided statements in her application summarizing her altercation with Mr. Ruiz consistent with Officer Rivas' report, noting the location of redness, scratch marks, and pain on her body. *See* S.A. 57, 61; *see also* S.A. 16–17. Mrs. Ruiz and Officer Rivas each signed the statement. *See* S.A. 17, 61. Another responding officer, Officer Campos, took photographs of Mrs. Ruiz and the scene, S.A. 58, *see* S.A. 62–71, and requested that Mrs. Ruiz be evaluated by the Brownsville Fire and Rescue Department due to the presence of pepper spray on her body, S.A. 54.

After the incident, Mr. Ruiz spoke with a Customs supervisor, Roy Zepeda, about the incident. S.A. 17, 72. Mr. Zepeda noted that Mr. Ruiz was "visibly distraught" and "red in the face and eyes and appeared to have a runny nose as if he may had [sic] been crying." S.A. 17 (quoting S.A. 72). Mr. Ruiz told the supervisor he had returned to Mrs. Ruiz's home because he had heard Mrs. Ruiz speaking on the phone with someone with a male voice, and when Mrs. Ruiz denied speaking to a man, he took her phone to prove it. He claimed this angered Mrs. Ruiz and prompted her to hit and pepper spray him. The supervisor advised

---

[2]    Oleoresin capsicum spray is also known as pepper spray. *See* S.A. 4 n.1.

Mr. Ruiz to report the incident to the police; another supervisor arranged for Mr. Ruiz to turn himself in to the Brownsville Police at a local gas station. S.A. 17, 72–73.

Mr. Ruiz was arrested the same day for robbery and burglary of a habitation with intent to commit an assault, and a judge issued the Magistrate's Order of Emergency Protection requested by Mrs. Ruiz. S.A. 18, 74. A county grand jury subsequently indicted Mr. Ruiz, leading the agency to suspend him indefinitely. *See* S.A. 18. Following the indictment, however, Mrs. Ruiz signed an Affidavit of Non-Prosecution, stating that she did not wish to pursue charges against Mr. Ruiz and requesting dismissal of all charges. *See* S.A. 18, 75–76. The criminal action against Mr. Ruiz was dismissed. *See* S.A. 18, 77. Customs returned Mr. Ruiz to full-duty status but informed him of an administrative investigation by the Office of Professional Responsibility. S.A. 18. When OPR interviewed him, Mr. Ruiz denied assaulting or hitting his wife. S.A. 18, 79. Mr. Ruiz acknowledged that he and Mrs. Ruiz had an argument in which she sprayed him with pepper spray to get her phone back, but he also claimed that his wife lied, had been coached by her attorneys, and provided alternative explanations for her physical injuries. *See* S.A. 19, 79–82. OPR separately interviewed Mrs. Ruiz; during the interview, she stated she had lied to the Brownsville Police about the incident, and that she and Mr. Ruiz were working through their problems. S.A. 19, 87–88.

In May 2019, Customs proposed Mr. Ruiz's removal based on charges of conduct unbecoming, lack of candor, and failure to report the Order of Emergency Protection issued again him. S.A. 19, 89–92. In its discussion of the lack of candor charge, Customs noted that Mr. Ruiz's denial to OPR agents of striking Mrs. Ruiz "directly contradicts the evidence in the Brownsville Police Department's case, including photos and police reports." S.A. 89–90. Mr. Ruiz submitted a written reply in response to the proposed removal. *See* S.A. 19–20. The reply included a written

statement from Mrs. Ruiz, in which she recanted statements in the police report and claimed she filed a false report. S.A. 20, 94. She explained that she had assaulted Mr. Ruiz and that the photos of her injuries she provided to the police were from accidents unrelated to her altercation with Mr. Ruiz. S.A. 94; *see also* S.A. 20. In October 2019, Customs issued a decision letter that sustained the conduct unbecoming and lack of candor charges after considering Mr. Ruiz's response to the notice of proposed removal. S.A. 20, 95. Customs further evaluated the reasonableness of the penalty of removal using the relevant factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.B. 313 (1981). *See* S.A. 95–96. Mr. Ruiz was removed effective October 18, 2019. S.A. 96.

Mr. Ruiz timely appealed his removal to the Board. Following a hearing where Mr. Ruiz, Mrs. Ruiz, and Officer Rivas all testified, the administrative judge issued an initial decision upholding the removal. S.A. 13–37. The administrative judge detailed the underlying facts in her decision and determined that the agency had proved its charges by preponderant evidence. The administrative judge cited Officer Rivas' testimony about her conclusion that an assault had occurred and her finding of probable cause to arrest Mr. Ruiz based on her observations of the scene and Mrs. Ruiz's physical injuries. *See* S.A. 22–25. The administrative judge acknowledged Mr. Ruiz's contentions supporting his claim that he did not punch or hit Mrs. Ruiz, but nonetheless found that, "[b]ased on the evidence of record, . . . the facts set out in the August 2017 police report accurately reflect the events of that day, and [found that Mr. Ruiz's] version of the events and his wife's testimony concerning these events [were] not credible." S.A. 25. She noted that Mr. and Mrs. Ruiz "have related several versions of the events of that day, but the evidence of record contradicts their current versions." S.A. 25. The administrative judge then articulated her factual basis for this conclusion based on the evidence on the record, stating

that she "[gave] great weight to the testimony of [Officer] Rivas," who "testified in a calm and neutral manner" and whose account in her incident report "is the most plausible in explaining the physical evidence." S.A. 26.

The Board denied Mr. Ruiz's petition for review and affirmed the administrative judge's initial decision, which it adopted as the Board's final decision. S.A. 2. Mr. Ruiz timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

Our scope of review in an appeal of a Board decision is limited by statute. We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Perlick v. Dep't of Veterans Affs.*, 104 F.4th 1326, 1329 (Fed. Cir. 2024). A Board's decision withstands substantial evidence review when it is "supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Haebe v. Dep't of Just.*, 288 F.3d 1288, 1298 (Fed. Cir. 2002) (quoting *Brewer v. U.S. Postal Serv.*, 647 F.2d 1093, 1096 (Ct. Cl. 1981)). The Board's credibility determinations are "virtually unreviewable." *Gibson v. Dep't of Veterans Affs.*, 160 F.3d 722, 725 (Fed. Cir. 1998) (quoting *Hambsch v. Dep't of the Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986)).

## III

Mr. Ruiz mainly challenges the Board's conclusion that Customs had proven the charges against him by

preponderant evidence. Pet. Inf. Br. at 6.[3] He argues that the record evidence is insufficient for a reasonable person to infer that he struck Mrs. Ruiz or that he lacked candor when he denied assaulting Mrs. Ruiz. He argues the evidence on record regarding Mrs. Ruiz's injuries is "unclear," Pet. Inf. Br. at 2, noting the Board "failed to take into account the normal side effects of [pepper] [s]pray on human skin" and that "[n]either Brownsville PD officer who encountered Mrs. Ruiz on the day of the incident noted any injuries which appeared to be from assault," Pet. Inf. Br. at 6. We disagree.

The administrative judge's initial decision and the Board's order affirming that decision reflect thorough consideration of all relevant facts and reach conclusions that are supported by substantial evidence. The administrative judge's finding that Mr. Ruiz assaulted Mrs. Ruiz was based on substantial evidence on the record: police photographs, the police report describing the events of the incident, and Officer Rivas' testimony. *See* S.A. 22–28; *see also* S.A. 2–3. The administrative judge also considered the conflicting evidence offered in support of Mr. Ruiz's contrary version of events, but found that they "were not substantiated, consistent with one another, or particularly convincing" and went on to identify multiple examples of inconsistencies and implausible statements. S.A. 26; *see* S.A. 22–28. In concluding that the account contemporaneously documented by Officer Rivas and Mrs. Ruiz on the day of the incident most accurately reflected the events and most plausibly explained all the physical evidence, the administrative judge specifically found Officer Rivas' testimony to be entitled to "great weight," observing that she

---

[3]   Mr. Ruiz made two submissions, ECF 10 and 12, which were together accepted as his opening brief. ECF 14. Citations to Mr. Ruiz's informal brief in this opinion cite to ECF 15, which consolidates Mr. Ruiz's accepted filings.

testified in a "calm and neutral manner" and with "no indication she had any motivation to exaggerate the facts presented to her by [Mrs. Ruiz] at the time of the incident or her own observations." S.A. 26. The administrative judge explained that, in contrast, Mrs. Ruiz had given varying inconsistent accounts of the incident that cast doubt on the truthfulness of her post-incident statements, noting that Mrs. Ruiz "was crying throughout her testimony." S.A. 28; *see* S.A. 26–28.

The full Board confirmed that the administrative judge considered, and appropriately weighed, the relevant testimony and corresponding record evidence to reach "well-reasoned findings." S.A. 3–4. The Board concluded that Mr. Ruiz's mere disagreement with those findings did not establish any error. S.A. 3–4. And insofar as the findings that Mr. Ruiz challenges rely in substantial part on the administrative judge's credibility determinations, we have held that such determinations are "virtually unreviewable on appeal." *Gibson*, 160 F.3d at 725 (quoting *Hambsch*, 796 F.2d at 436). All the determinations made by the Board in reaching its decision are supported by substantial evidence.

## IV

We have considered the remainder of Mr. Ruiz's arguments and find them unpersuasive. Because the Board's decision was in accordance with the law and supported by substantial evidence, we affirm.

## AFFIRMED

### COSTS

No costs.